H. S. BETTES ET AL. v. THE WEIR PLOW COMPANY ET AL.

No. 7459.

84  543<br>
89  186

1. **Assignment—Mortgage—Employment of Mortgagor.**—The employment of the mortgagor by the trustee to sell the goods as the agent of the trustee after the mortgage is executed does not of itself operate to avoid the mortgage.   See example.

2. **Cases Adhered to.**—Crow v. Bank, 52 Texas, 362; and Jackson v. Harby, 70 Texas, 410, adhered to.

3. **Construction of Statutes—Section 17 of Assignment Act.**—It seems that the seventeenth section of the Act of March 24, 1879 (Sayles' Civ. Stats., art. 65r), is but a declaration of the rule at common law.   Peiser v. Peticolas, 50 Texas, 638.

4. **Same.**—It seems that section 17 of said act is not included within the caption of the act.   The act relates to assignments; so is the caption. It should not then prescribe rules touching mortgages; mortgages and assignments have clearly defined and different qualities.

5.   **Practice in Supreme Court.**—In an action for value of property unlawfully taken by the defendants, however clear the right to recovery may be shown on appeal from an adverse judgment, this court can not reverse and render unless the value of the property appears.  See example where there was conflict in evidence as to value.

APPEAL from Fannin.   Tried below before Hon. W. A. EVANS, Special District Judge.

No statement is necessary.

*Dudley & Moore* and *Taylor & Galloway*, for appellants.—1.  The mortgage in this case being valid, and duly deposited in the office of and filed with the clerk of Fannin County, Texas, and there registered as the law directs, and executed for the purpose of securing bona fide debts of the makers larger in amount than the value of the property conveyed, and the trustee having taken the actual possession of the property conveyed and placed it in the possession and control of a third party, one D. E. Waggonner, the subsequent employment of W. H. Bettes, one of the makers, by the trustee, to sell and dispose of the goods for him as his agent, can not affect the validity of the mortgage.   Jackson v. Harby, 70 Texas, 410; Stiles v. Hill, 62 Texas, 429; Van Hook v. Walton, 28 Texas, 59; Crow v. Bank, 52 Texas, 362; Peiser v. Peticolas, 50 Texas, 638; Allen v. Carpenter, 66 Texas, 138; Scott v. McDaniel, 67 Texas, 315; Ellis v. Valentine, 65 Texas, 532; Lewy v. Fischl, 65 Texas, 311.

2.   Even if a prima facie case of fraud (which we deny) is shown against the deed of trust in this case, by the proof of one or more facts, called badges of fraud, proof of the validity of the debts secured and the actual good faith of the trustee and beneficiaries in the deed will sustain it.   Rev. Stats., art. 2465; Allen v. Carpenter, 66 Texas, 138; Scott v. McDaniel, 67 Texas, 315; Jones v. Simpson, 116 U. S., 609; Kellogg v. Muller, 4 S. W. Rep., 361.

3.   A trust deed on a stock of goods daily exposed to sale in the regular course of business of the owner thereof, given by him to a trustee for the purpose of securing his bona fide debts, with exclusive control of said goods and business by the trustee and actual possession thereof by him, is not made void by an agreement between the trustee and said owner made after the execution of the deed of trust and the delivery of possession, contemplating the employment of said owner as a clerk to sell said goods under the control and management of the trustee. Jackson v. Harby, 70 Texas, 410; Stiles v. Hill, 62 Texas, 429; Van Hook v. Walton, 28 Texas, 59; Crow v. Bank, 52 Texas, 362; Peiser v. Peticolas, 50 Texas, 638.

No brief for appellees reached the Reporter.

GAINES, ASSOCIATE JUSTICE.—On the 14th day of February, 1889, W. H. Martin & Co., dealers in hardware, being insolvent, executed to H. S. Bettes a deed in trust, in the nature of a chattel mortgage, upon their stock in trade, for the purpose of securing certain preferred creditors. The Weir Plow Company, being a creditor of the mortgagors, sued out a writ of attachment against their property, and caused it to be levied upon a portion of the goods so mortgaged. This action was brought by the trustee and the beneficiaries in the deed of trust against the attaching creditor and the sheriff to recover damages for the seizure of the goods. The case was tried by the court without a jury, and judgment was rendered for the defendants.

The judge filed his conclusions of law and fact. He found, in substance, that the firm of W. H. Martin & Co. was composed nominally of W. H. Martin and Mrs. Bettes, but that Mrs. Bettes was a married woman, and that in legal contemplation her husband W. H. Bettes was the real partner; that they executed the mortgage as alleged by the plaintiffs, and that at the time they were unable to pay their debts. The findings of fact then proceed as follows: "I find, that after the deed of trust was executed by W. H. Martin, Emily F. Bettes, and her husband W. H. Bettes, that the store and merchandise were turned over to H. S. Bettes, the trustee; he locked the store door and turned the key over to D. E. Waggoner, who was employed to invoice the goods; that W. H. Bettes was also employed to assist in taking stock (invoicing); that he was also on the same day, but after the execution of the deed of trust, employed to take charge of the goods when the invoice was completed; that in two or three days, the invoicing being completed, W. H. Bettes did take charge of the store and stock of merchandise and held possession of the same, selling the goods in the usual course of trade, until the 1st day of March, 1889, when R. D. Chaney, sheriff of Fannin County, made the levy as alleged.

The court concluded, as a matter of law, that "the fact of his [W. H. Bettes] being contracted with to assist in making the invoice, and after its completion to take charge of the stock and sell it in due course of trade, though subsequent to the execution of said deed of trust and delivery of possession to H. S. Bettes, yet on the same day, and the fact of (in pursuance of said contract) his taking possession of the same and selling said goods is in violation of section 17 of the Act of 1879, in relation to assignments, and therefore renders said deed of trust null and void."

It is to be noted, that the learned special judge does not find that the employment of W. H. Bettes to sell the mortgaged goods was agreed upon between the parties either before or at the time the mortgage was delivered. Nor do we think the testimony would have warranted that conclusion. Both H. S. Bettes and W. H. Bettes swore positively, that the engagement was made after the execution of the mortgage, and that

there was no previous understanding or agreement to the effect that it should be done. This unassailed testimony explained away the only circumstance which tended to establish a contrary conclusion—namely, the mere fact that soon after the inventory was completed W. H. Bettes was placed in charge and proceeded to sell the goods. The express finding, that the contract with W. H. Bettes to sell the goods was made after the mortgage was executed, clearly shows that the court did not find that there was any agreement to that effect previous to that time.

That the employment of the mortgagor by the trustee to sell the goods as the agent of the latter after the mortgage is executed does not operate to avoid the mortgage has been authoritatively determined by this court. In Crow v. The Bank, 52 Texas, 362, the court say: "If a mortgage be given upon a stock of goods to secure a bona fide debt, the fact that the mortgagors remained in possession and sold the same as agents of the mortgagees, and applied the proceeds to the payment of the debt, would not of itself render the mortgage void. Such contracts should not be encouraged by the court, as they have a tendency to throw too wide the door for possible fraud. One objection to them would, however, be obviated if the mortgagee be held accountable for a proper disposition of the property and application of the proceeds." The point was involved in the case; but it is to be remarked, that the case arose before the passage of the Act of March 24, 1879, in relation to assignments for the benefit of creditors. Sayles' Civ. Stats., art. 65r. But in Jackson v. Harby, 70 Texas, 410, the provision of the statute cited was under a similar state of facts expressly construed, and it was held, that a subsequent employment by the trustee of one of the mortgagors to sell the mortgaged goods did not annul the mortgage if valid at the time of its execution. In the opinion the court say: "While the subsequent contract by the trustee with the debtor to aid in the sale is a subject of inquiry as a circumstance for what effect the jury may determine, yet in itself it could not affect rights previously acquired, if at all, by the beneficiaries."

While the court found, that W. H. Bettes took charge of the goods after the mortgage and sold them in due course of trade, the undisputed testimony was, that he sold the goods as the agent of the trustee and for cash only, and that the proceeds of the sales were promptly turned over to the latter. The prices were reduced as the sales proceeded, and the stock was entirely disposed of a short time after the mortgage was given. The disposition was doubtless hastened by the seizure of the large part of the stock of which complaint is made in this suit. It was, however, strictly a closing out sale. There was no replenishment of stock.

We conclude, that the court erred in holding that the mortgage under consideration was void, and for this error the judgment must be reversed.

However, before dismissing this subject I will take occasion to remark, that section 17 of the Act of March 24, 1879, seems to me but a declaration of a rule of the common law. Peiser v. Peticolas, 50 Texas, 638. If it should be held to do more than this, a question might arise whether the subject matter of the provision is sufficiently indicated in the title of the act as not to render it obnoxious to the restriction in the Constitution, which provides, in effect, that "No bill * * * shall contain more than one subject, which shall be expressed in its title." The title of the act is, "An act in relation to assignments for the benefit of creditors, and to regulate the same and the proceedings thereunder." Our decisions have carefully distinguished between assignments and mortgages of the character of that now under consideration. The latter are held not to be assignments within the meaning of the act, and its provisions (other than that contained in section 17) have been declared to have no application to mortgages. It would seem, therefore, that mortgages and liens are not embraced within the terms of the title of the act. But however we may view it, the question is not involved in this case. Nor do I think it ought to be involved in any case, since in my opinion the section under consideration merely declares the rule of the common law as announced in Peiser v. Peticolas, above cited.

Appellees ask us not only to reverse the judgment, but to render a judgment here for appellants. Upon a reversal it is our duty to render such judgment as the court below should have rendered, "except where it is necessary that some matter of fact be ascertained, or the damages to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below." Rev. Stats., art. 1048. The court did not find the value of the goods levied upon at the time of the seizure. Nor does the evidence show beyond controversy what the value was. Two witnesses testified, that they were worth $1558.90. The sheriff assessed their value in his return at $1111.50. They were sold by him as sheriff for $476. Under this evidence, we do not feel at liberty to determine the fact.

The cause must be accordingly remanded for a new trial, and it is so ordered.

*Reversed and remanded.*

Delivered May 6, 1892.