CLARK & BOICE LUMBER CO. v. COMMERCIAL NAT. BANK OF JEFFERSON. (No. 1842.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 23, 1917. Rehearing Denied Dec. 6, 1917.)

1. CHATTEL MORTGAGES ⬤⇝47—DESCRIPTION OF PROPERTY—SUFFICIENCY.

Where the scrivener who prepared a chattel mortgage failed to insert the description of the property at the place where it would logically be found, but there was a reference in another part of the mortgage which stated with reasonable certainty what property the parties intended to incumber, the mortgage being valid between the parties, may, in view of the fact that a mortgage of chattels to be valid between the parties need not be in writing, be supplemented by parol evidence as to the property incumbered and despite any possible insufficiency in the description is, as to one who purchased property knowing that it was incumbered, sufficient.

2. APPEAL AND ERROR ⬤⇝907(3)—REVIEW— PRESUMPTIONS.

In the absence of a statement of fact it will be assumed that the trial court had before it evidence sustaining its determination.

3. CHATTEL MORTGAGES ⬤⇝189—VALIDITY— STATUTE.

Rev. St. art. 3970, declares void every mortgage or deed of trust attempted to be given by the owner of any stock of goods, wares, or merchandise, daily exposed for sale in parcels in the regular course of business and contemplating a continuance of the possession of the goods and control of the business by the owner. Plaintiff loaned a cotton oil company funds to

purchase seed for its mills, and the cotton oil company executed a chattel mortgage on the seed and the products manufactured therefrom, including oil, meal, and hulls. The chattel mortgage further recited that the oil company should at the end of each week make a written report to plaintiff showing the amount of seed on hand, and the amount of manufactured product, and that plaintiff should retain the seed tickets showing the amount paid, until the seed should be manufactured, the products disposed of and the money received thereby applied to plaintiff's debt. *Held,* that such mortgage, despite occasional retail sales by the oil company, did not, though the oil company was made plaintiff's agent for the sale of the manufactured products, etc., violate the statute, for such statute should be given a strict construction, and does not apply unless all the element sspecified exist.

4. CHATTEL MORTGAGES ⬅225(1)—CONVERSION—WHAT CONSTITUTES.

In such case, a purchaser familiar with the stipulations of the mortgage who, over the objection of the cotton oil company, retained the purchase price, or by agreement with the company diverted the purchase price of manufactured products to a purpose contrary to that expressed in the mortgage, becomes a wrongdoer, and holds the property subject to rights of mortgagee, and is liable for misapplication of a trust fund.

Appeal from District Court, Marion County; J. A. Ward, Judge.

Action by the Commercial National Bank of Jefferson against the Clark & Boice Lumber Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Glass, Estes, King & Burford, of Texarkana, for appellant. Schulter & Singleton, of Jefferson, for appellee.

HODGES, J. This is a suit commenced by the appellee against the appellant in the court below for conversion of a quantity of cotton seed meal on which the appellee claimed to have a mortgage. The case was tried before the court without a jury, upon substantially the following facts: The Jefferson Cotton Oil & Fertilizer Company, a private corporation, was in September, 1913, engaged in the business of buying cotton seed and manufacturing same into oil, meal, and hulls. Desiring to purchase cotton seed for that purpose, it borrowed the sum of $4,000 from the Commercial National Bank of Jefferson, the appellee in this appeal, for which sum it executed a note. On the 6th of September, 1913, contemporaneously with the execution of the note and to secure its payment, the oil mill company executed a chattel mortgage, of which the following is in part a copy:

"That we, the Jefferson Cotton Oil & Fertilizer Company, of the county of Marion and state of Texas, to secure my indebtedness to the Commercial National Bank of Jefferson, Texas, for the sum of forty-one hundred three and ten/100 dollars, as evidenced by ...... certain promissory note, bearing date the 6th day of September, 1913, payable to the order of the Commercial National Bank of Jefferson, at its office in Jefferson, Texas, on the ......, signed by ourselves, and also such other sums of money which we may be owing to the Commercial National Bank of Jefferson during the year 1913

and 1914, having bargained, sold and conveyed and by these presents do bargain, sell, release and convey to the Commercial National Bank of Jefferson, of the county of Marion and state of Texas, all that certain ...... in Marion county, Texas. Also the following described personal property, to wit:. This money is furnished to the said Jefferson Cotton Oil & Fertilizer Company of Jefferson, Texas, to purchase seed for said mill, and this instrument is intended as a mortgage on said seed and all the by-products manufactured therefrom, including all oil, meal and hulls, and any other that may be manufactured by said mill. It is hereby understood and agreed that said mill shall, at the end of each week, make a written report to the Commercial National Bank showing the amount of said seed on hand in the house and elsewhere, and the amount of products of each kind on hand figured at the market price of said products and the amount paid for seed. The said Commercial National to retain the seed tickets showing amount paid until the seed have been manufactured and the products disposed of and the money received thereby applied to any indebtedness it may then owe to the said Commercial National Bank of Jefferson, Texas."

Other advances of money were from time to time made to the oil mill company, for the purpose of enabling it to buy seed to be used in the manufacture of its products. During the course of the construction of the oil mill it became indebted to the appellant, Clark & Boice Lumber Company, for lumber and material furnished in the erection of the necessary buildings; and at the time this litigation originated it was indebted to the Clark & Boice Lumber Company in the sum of $4,918, evidenced by a note, and in the further sum of $555 on an open account. This indebtedness appears to have been secure by a mortgage upon some other property, not involved in this contest. During a period extending from February 4, 1914, to May 19th following, the oil mill company sold to the appellant cotton seed meal to the amount of $1,478. Instead of paying cash for the meal purchased, the Clark & Boice Lumber Company gave the oil mill company credit for that sum on its indebtedness. The court found as a fact that the meal sold and delivered to the Clark & Boice Lumber Company was that upon which the appellee had a mortgage, and that this sale and the refusal to pay the purchase price of the same constituted a conversion; and judgment was accordingly rendered in favor of the appellee.

Among other conclusions of law filed by the court, he holds that the mortgage before referred to was valid, and was not within the terms of the statute making that class of mortgages fraudulent and void; but further concludes that under the terms of the mortgage executed by the oil mill company it became the agent of the mortgagee for the purpose of selling the mortgaged products of the mill, and to pay over the proceeds in accordance with the terms of the instrument. He also concludes that the mortgage was intended to cover all the cotton seed purchased with the money furnished by the

plaintiff, and all of the by-products of the cotton seed manufactured therefrom, and any other by-products that might be manufactured by the mill.

At the request of the appellant the court made additional findings, some of which we regard as immaterial in considering the issues here presented. As to the manner in which the oil mill company disposed of its product the court found:

"That it [the oil mill company] manufactured all of the cotton seed purchased by it with the money obtained from the sources above mentioned into cotton seed oil, cotton seed meal, cotton seed hulls and delinting cotton; that the manufactured products were stored in tanks, rooms and sheds forming a part of the plant of said company at Jefferson, and sold therefrom, most of same being delivered on cars and sold in carload lots upon contracts, but the retail trade at Jefferson and in that vicinity was also supplied with cotton seed meal and cotton seed hulls when the parties came to the plant to make purchases; that cotton seed meal was put in sacks of 100 pounds each, and kept in a room or warehouse used exclusively for cotton seed meal in its plant at Jefferson, Texas, and loaded therefrom on cars upon orders or contracts and delivered therefrom to such retail trade as the company had at Jefferson and in that vicinity. And I further find that a number of persons at Jefferson and farmers in the vicinity of Jefferson purchased at said plant from said oil company such quantities of cotton seed meal as they desired, the same being delivered by said company to them from said warehouse and sold to them at retail prices."

There are two principal grounds upon which the appellant rests its defense in this case: One is that the description of the mortgaged property in the instrument relied upon is insufficient. The second is that the mortgage is an effort to incumber goods, wares, and merchandise remaining in the hands of the mortgagor and daily exposed for sale, and for that reason is prohibited by article 3970 of the Revised Civil Statutes.

[1, 2] It is apparent from an inspection of the mortgage itself that the writer who prepared it failed to insert the description of the property at the place where it would logically be found. There is, however, in another part of the mortgage, a reference which states with reasonable certainty what property the parties intended to incumber. Where the record alone is relied upon to give notice to third parties dealing with mortgaged property, the law is more exacting in its requirements as to the sufficiency of the description than in cases where they have actual notice of the identity of the property covered. It has been held that a mortgage of chattels need not be in writing. Edwards v. Mayes, 136 S. W. 510; Gardner v. Planters' National Bank, 54 Tex. Civ. App. 572, 118 S. W. 1147; Crews v. Harland, 99 Tex. 93, 87 S. W. 656, 13 Ann. Cas. 863. If an entire chattel mortgage, good as between the parties and those having actual notice, may be established by parol, there would seem to be no good reason why an inadvertent omission from a written instrument could not be supplied by oral testimony if this should become necessary, and does not contradict the writing itself. In this instance the court finds as a fact that the property sold and delivered to the appellant was that covered by the mortgage, and there is no contention that this finding is not supported by the evidence; in fact, there is no statement of facts in the record. Neither is there any contention that the appellant had no notice that the property purchased by it was incumbered with a mortgage. We must therefore assume that the trial judge had before him satisfactory legal evidence that the property was mortgaged, and that the appellant knew that it was so incumbered at the time purchase was made.

[3] The second objection urged, that the mortgage was void because in violation of the terms of the statute, presents a more difficult question. The only basis for the contention that the property mortgaged was "a stock of goods, wares, and merchandise daily exposed for sale" is to be found in the findings of the court heretofore set out. The court concluded from the terms of the mortgage that the mortgagor retained possession and disposed of the mortgaged property as the agent of the mortgagee. The correctness of that conclusion is assailed by the appellant. In Crow v. Red River County Bank, 52 Tex. 362, our Supreme Court had under consideration a question very similar to that here involved. Justice Bonner, who rendered the opinion of the court, said:

"In the case of Peiser v. Petticolas, 50 Tex. 638 [32 Am. Rep. 621], this court decided that a mortgage upon a stock of goods, when the mortgagor retains possession and, with the knowledge and consent of the mortgagee, sells them in the usual course of trade and applies the proceeds to replenish the stock, and not to the payment of the debt, was void as being against public policy and inconsistent with the true purposes of a mortgage; that if the intent and purpose of the parties to make such a mortgage are manifest from the terms of the instrument itself, it should be declared void by the court; that if not thus shown, then it is a question of fact for the jury, who should find against the validity of the mortgage, if this intent and purpose are shown by uncontradicted testimony. The mortgage in this case is in the usual form, and does not contain any stipulation that the mortgagors should remain in possession of the goods and sell them in the usual course of trade, and apply the proceeds to their own benefit or to the purchase of other goods. The testimony tended to prove that though the mortgagors remained in possession and sold the goods, they did so as agents of the mortgagees. If a mortgage be given on a stock of goods to secure a bona fide debt, the fact that the mortgagors remained in possession and sold the same as agents of the mortgagees, and applied the proceeds to the payment of the debt would not, of itself, render the mortgage void."

The same rule is announced by the Supreme Court of Montana in Noyes v. Ross, 23 Mont. 425, 59 Pac. 367, 47 L. R. A. 400, 75 Am. St. Rep. 543, where the question is discussed at some length. It is true that the Texas case referred to arose before the enactment of the statute now appearing as article 3970, which declares void every mortgage or deed of trust

attempted to be given by the owner of any stock of goods, wares, or merchandise daily exposed for sale in parcels in the regular course of business and contemplating a continuance of the possession of the goods and control of the business by the owner. In the case of Bettes v. Weir Plow Co., 84 Tex. 543, 19 S. W. 705, which arose after the enactment of our statute, Justice Gaines refers to that statute as being merely declaratory of the common-law rule. Evidently the act was not an effort to arbitrarily narrow the right of contract and deprive parties of the power to create bona fide liens to secure just obligations. It may properly be regarded as an effort to protect creditors and purchasers from fraudulent or fictitious incumbrances. Where the, mortgage contemplates that the mortgagor is to remain in control of the mortgaged property as the owner, with authority to dispose of it in any manner he sees proper and with the option to retain the proceeds of the sales made or apply them to the satisfaction of the mortgage debt, such a lien would be more of a fiction than a reality and could serve no purpose further than to shield the property of the debtor from the demands of other creditors.

In the case of Bowen et al. v. Lansing Wagon Works, 91 Tex. 385, 43 S. W. 872, the Supreme Court had under consideration a case apparently within the meaning of article 3970. The facts showed that Bowen was a dealer in wagons, buggies, and other similar vehicles, with his place of business in the city of Waco, Tex. He had entered into a written contract with the Lansing Wagon Works for the purchase of a number of vehicles to be disposed of by him in the regular course of business. The contract stipulated, however, for a reservation of the title in the Lansing Wagon Works. It was contemplated that the property should be sold in the regular course of business and paid for in cash or in the notes of the purchasers. Those notes were to be forwarded to the Lansing Wagon Works as taken. While still having some of the Lansing vehicles on hand, Bowen executed a deed of trust in favor of certain named creditors on his entire stock. In a contest between the Lansing Wagon Works and the creditors of Bowen claiming under that deed of trust the validity of the lien asserted by the Lansing Wagon Works was assailed. In answering certified questions the Supreme Court held that the lien claimed by the Lansing Wagon Works resulting from a reservation of the title at the time of sale did not come within the meaning of the act of 1879, now article 3970. The question, however, was discussed very briefly. Justice Denman, who rendered the opinion, merely stated that this law should not be intended so as to include that transaction, a reservation of title by the vendor; that such was not "any form of lien attempted to be given by the owner." This appears to be an exceed-

ingly strict construction of article 3970, and evinced an indisposition on the part of the court to extend its provisions beyond what is clearly within the terms of the statute. For the practical consequences to third parties dealing with mortgaged property is the same, whether the adverse lien results from the title being reserved by the vendor or from the giving of a chattel mortgage by the vendee. In view of this ruling we do not feel warranted in extending the scope of that statute beyond the evils it was intended to suppress.

In order that a transaction may fall within its inhibition all of the conditions there enumerated should exist. It does not denounce as unlawful a mortgage merely because it. stipulates that the mortgagor shall retain possession of the property and sell it, nor does it apply to all classes of property. The property must not be a "stock of goods, wares, or merchandise," but must be "daily exposed for sale" by the mortgagor "in parcels in the regular course of his business." Manifestly this description was intended to include tradesmen engaged in mercantile enterprises, as a business, and that class of property which is usually and customarily designated as a "stock of goods, wares, or merchandise." Whether or not the property mortgaged belongs to that class is usually a question of fact to be settled by the evidence. In this instance there is nothing in the facts found by the court which necessitates the conclusion that the cotton seed meal sold to the appellant constituted a stock of merchandise, or that it was to be "daily exposed for sale in the regular course of business." The court may have concluded that the property was only the product of a factory, and that the mortgage provided that it should be sold under conditions not amounting to a daily exposure for that purpose in the regular course of the business. Unless the mortgage itself or the accompanying evidence discloses a purpose on the part of both parties that the property shall be disposed of in the manner designated in the statute, it is not unlawful. The mortgagor cannot alone adopt that method and thus annul his own obligation.

In the case before us the mortgage stipulates, not how the lien may be forclosed in case of default in the payment of the debt, but that the property shall be sold and the proceeds paid over and applied in satisfaction of the debt. The mortgagor is given no option in the matter; it is made his duty when the goods are sold to thus apply the proceeds. This was in itself a method of foreclosure—not an exclusive one, it is true, but one which is not per se unlawful. The fact that the mortgagor was selected to make the sales of the property and report the proceeds is not alone sufficient to bring the transaction within the terms of the statute. Whether or not it was designed to operate as a hindrance to the enforcement of their rights by other

creditors and serve only a fraudulent purpose was a question of fact upon which the court had a right to pass, and his conclusion upon that issue is not assailed.

[4] But it may be said that if the mortgagor was authorized to sell the property it had the power to pass a good title to the purchasers; that the mortgagee by permitting a sale waived its lien. That would be true as to parties who purchased in compliance with the terms of the mortgage; but when the purchaser, familiar with the stipulations of the mortgage over the objection of the mortgagor retains the purchase price, or when by an agreement with the mortgagor he diverts the purchase price to a purpose contrary to that expressed in the mortgage, he becomes a wrongdoer, and a party to a misapplication of a trust fund. He holds the property subject to the rights of the mortgagee. Wethered v. Boon, 17 Tex. 143; Kennedy v. Baker, 59 Tex. 154; Perry on Trusts, §§ 217, 225; Black v. Caviness, 2 Tex. Civ. App. 118, 21 S. W. 635.

We regard it as unnecessary to discuss the remaining assignments of error, and the judgment of the trial court is affirmed.