## GRIMES v. HUNTSVILLE STATE BANK.
### (No. 9234.)

Court of Civil Appeals of Texas. Galveston.
Dec. 14, 1928.

Rehearing denied Jan. 10, 1929.

William F. Grimes, of Houston, and Henson & Thomason, of Huntsville, for appellant.

M. E. Gates and L. M. Cox, both of Huntsville, for appellee.

LANE, J. On and prior to the 26th day of February, 1926, one A. L. Cline was indebted to W. A. Grimes, appellant herein. On the 3d day of December, 1926, W. A. Grimes recovered a judgment for said debt in the district court of Walker county in the sum of $3,766.26, which, together with interest, etc., amounted to the sum of $3,804.56 on the 23d day of February, 1927.

On the day last mentioned, Joe F. Henson, attorney for W. A. Grimes, made affidavit that he was such attorney; that W. A. Grimes had recovered the judgment mentioned; that it was wholly unpaid; that A. L. Cline had not, within the knowledge of W. A. Grimes or of himself, property in his possession within the state of Texas subject to execution sufficient to satisfy said judgment; that W. A. Grimes and affiant had reason to believe, and did believe, that the Huntsville State Bank, of which one J. G. Ashford is president and W. C. Jones vice president, is indebted to A. L. Cline; or that said bank has in its hands effects belonging to said Cline. He prayed for the issuance of a writ of garnishment against said bank.

On the same day the writ prayed for was issued, commanding the garnishee to "answer upon oath, if anything, it is indebted to the said A. L. Cline, and was when this writ was served upon it, and what effects, if any, of the said A. L. Cline it has in its possession, and had when this writ was served, and what other persons, if any, within its knowledge, are indebted to the said Cline, or have effects belonging to him in their possession." On the same day said writ was duly served upon garnishee.

Garnishee answered under oath, saying that it was, at the time of making its answer and at the time said writ of garnishment was served upon it, indebted to A. L. Cline in the sum of $2.01; that it was not at such time, nor at the time of the service of the writ on it, in possession of any effects belonging to A. L. Cline, and that it did not know of any person or persons who were indebted to A. L. Cline or have or had any effects belonging to him in their possession; that it had to employ M. E. Gates, an attorney, to prepare (this) its answer and agreed to pay said attorney the sum of $25, which was a reasonable amount for such service.

W. A. Grimes controverted the answer of the garnishee, saying that he had good reason to believe and did believe that said answer was untrue, in that on the 26th day of February, 1926, A. L. Cline, his judgment debtor, by an instrument in writing made a sale in bulk of all lumber on his millyard and all that he might thereafter cut, to garnishee, until his indebtedness should be fully paid; that said instrument was duly registered in the "Mortgage Registry" of Walker county, Tex.; that at the time of such sale, and prior thereto, A. L. Cline was indebted in him, W. A. Grimes, which has been reduced to judg-

ment, as shown by a copy of same filed in this cause on the 3d day of December, 1926, and that the said Cline is still indebted to him for the full amount of the judgment; that, at the time of said sale and transfer, and since such time, A. L. Cline was engaged in the manufacture and sale of lumber and had on hand and owned a stock of lumber of approximately 90,000 feet, which he daily exposed for sale in parcels in the regular course of business; that he made sales and deliveries thereof in carload lots and otherwise at the yard and elsewhere. He says that such sale and transfer was in violation of article 4000 and 4001 of our Revised Statutes relating to bulk sales, and was therefore void as an attempt to defraud creditors of said Cline. He further says that, by virtue of such sale and transfer of said stock of lumber in bulk, the garnishee converted the same to its own use and benefit in violation of said statutes, and therefore such attempted mortgage, sale, and transfer is void as to him and other creditors of Cline; that the value of said lumber is unknown to him, but is known by garnishee; that he believes that such value exceeds the amount of his judgment against Cline; that he is unable to produce the instrument executed by Cline, as it is not in the files of the county clerk; and that he believes garnishee is in possession of the same, or has knowledge of its whereabouts, and therefore garnishee is given notice to produce the same, etc.

His prayer is for the court to hold the mortgage, sale, and transfer void as to him, for an accounting of such lumber so received by the garnishee from Cline, and for judgment against garnishee for the full amount of his judgment.

Garnishee, in answer to said controverting plea of Grimes, denies generally the allegations of said controverting answer, except such as are admitted in its answer. It specially denied that Cline was, on or prior to the 26th day of February, 1926, a retailer of lumber, but avers:

That, at and prior to such time, he was a manufacturer of lumber and selling the same at wholesale only from pine logs which had been bought and paid for with funds of garnishee, and that, after the 26th day of February, 1926, garnishee bought all of the pine logs used by Cline in the manufacture of lumber by and through Cline as its agent, and that the proceeds of sales of said lumber so manufactured by Cline was, under the *provisions and terms of the chattel mortgage referred to*, to be paid directly to garnishee, and that all shipments of any part of such lumber were to be shipped through garnishee.

"That the mortgage referred to in said controverting answer was to secure a demand note, of even date with said mortgage, which was in writing, and executed by said A. L. Cline, and payable to the garnishee in the sum of Seventeen Hundred Eleven Dollars and

fifty cents ($1,711.50), and at the time of the execution of said note it was contemplated by the garnishee and said A. L. Cline that it would require additional sums of money to carry on the manufacture of lumber and that said mortgage provided and said garnishee agreed to make at its direction further advances to said A. L. Cline.

"That thereafter all of the operation, contracts and sales of said A. L. Cline by virtue of the terms of said chattel mortgage and by virtue of an oral agreement and understanding between garnishee and said A. L. Cline of even date with said mortgage, were done and performed as the agent of the said garnishee.

"That A. L. Cline at said time agreed with the garnishee that he would as their agent undertake to manufacture certain other pine logs and trees, then owned in the name of A. L. Cline but which had been bought and paid for with the funds of the garnishee, into lumber, as agent of said garnishee and did thereafter conduct said business under the direction of the garnishee, and made all sales as the agent of the garnishee and mostly after obtaining the permission of the garnishee and did thereafter conduct said business under the direction of the garnishee, and made all sales as the agent of the garnishee and mostly after obtaining the permission of the garnishee to make sales, and that under the terms of said chattel mortgage and under the terms of said oral agreement, it as aforesaid had been entered into by the parties garnishee and said Cline, the proceeds of said sales were either paid direct to the garnishee or collected by Cline and immediately turned over to the garnishee.

"That by reason of a past due indebtedness to said bank and from the further reason that the said business was a manufacturing and not a retail business, the said stock of lumber then manufactured on the 26th day of February, 1926, and all of the said lumber afterwards manufactured was not subject to Bulk Sale Law as set out in the controverting plea.

"That the indebtedness due by A. L. Cline to the said W. A. Grimes, if any, was secured by chattel mortgage and attachment liens and had been prosecuted to judgment in the district court with foreclosure of the liens aforesaid, and was indebtedness due by said Cline to said W. A. Grimes and the security therefor long prior to the execution of the chattel mortgage aforesaid to the garnishee, and the debt of the said W. A. Grimes was not an obligation between merchant and merchant, nor was it an obligation growing out of the operation and manufacture of the lumber which was mortgaged to garnishee, but was an obligation growing out of a contract and an agreement entered into by Grimes and Cline several years ago, and thereby the said Grimes is not permitted to plead and have the benefits of the Bulk Sales Law."

W. A. Grimes filed what he terms his sup-

plemental petition, by which he demurred generally to garnishee's answer, and by which he presented several special exceptions to such answer, and entered his denial of all allegations therein contained.

The pleadings of the parties, the substance of which we have stated, were submitted to the court on the 29th day of November, 1927, and upon such submission garnishor, W. A. Grimes, on the same day, filed and presented to the court his written motion asking the court to render judgment upon the pleadings in his favor against the garnishee bank, for the sum of $4,139.74; same being the sum due upon his judgment against A. L. Cline.

On the next day, the 30th day of November, the court overruled garnishor's motion, and, as neither party proposed to offer any evidence, the court proceeded to dispose of the cause upon the pleadings of the parties, and, upon considering such pleas, reached the opinion that the garnishor, Grimes, should, upon the answer of the garnishee, recover from it the sum of $2.01, and that the garnishee should recover from the garnishor the sum of $25, the sum paid garnishee to his attorney for preparing its answer to the writ of garnishment. Judgment was accordingly rendered. Whereupon, on the same day, garnishor excepted to the ruling and the judgment so made and rendered, and gave notice of appeal.

On the 8th day of December, 1927, the garnishor filed his motion praying for a reformation of the judgment rendered on the 30th day of November and filed for record on December 6th. The court overruled said motion, and on the same day garnishor filed his motion for a new trial, which the court on the same day overruled. Whereupon garnishor again excepted and gave notice of appeal.

His motion for a new trial having been overruled, garnishor requested the court to file his findings of fact and conclusions of law. Complying with such request, the court found that W. A. Grimes recovered a judgment against A. L. Cline for the sum of $3,766.26, together with interest and costs of suit, as alleged by him, on the 23d day of December, 1927; that the writ of garnishment prayed for by Grimes was duly issued, and was duly served on garnishee on the 23d day of December, 1927. He then recites the fact that the several parties filed their respective pleas, and set them out in hæc verba.

After having set out the pleas of the parties, the court made the following recitals:

"The cause was continued at the May Term 1927 of the District Court of Walker County, Texas, and on the first day of the November Term 1927, of said Court, by agreement of the parties, this case was set down for trial for Wednesday, the 30th day of November, 1927, and on said 30th day of November, 1927, the cause was called for trial in regular order, and all parties appeared and announced ready for trial, and the plaintiff first presented certain exceptions to the garnishee's answer to the controverting plea of the plaintiff, and one of said exceptions was sustained and the others were overruled, and the plaintiff duly excepted to the action of the Court in overruling the exceptions which were not sustained, and immediately thereafter asked for judgment for the plaintiff against the defendant, garnishee, for the full amount of plaintiff's judgment, making this request in the form of a written motion.

"An extended hearing was had by the Court on the motion for judgment on the pleadings, and the Court refused judgment as prayed for by the defendant, but none of the parties offering any evidence other than sworn pleadings the Court found, and finds, that on the pleadings plaintiff was entitled to judgment for the Two Dollars and One Cent ($2.01) against the garnishee, and that the garnishee was entitled to judgment for Twenty Five Dollars ($25.00) for cost incurred in the preparation of its answer.

"This judgment of the Court was announced as the finding and conclusion and judgment of the Court, at the close of argument, and at that time plaintiff asked for no further time within which to offer evidence, and offered no evidence, and made no suggestion that he had any evidence to offer, other than the pleadings themselves, and the plaintiff, when the judgment of the court was announced, excepted thereto in Open Court, and gave notice of appeal to the Honorable Court of Civil Appeals for the First Supreme Court Judicial District of Texas, at Galveston.

"Conclusions of Law.

"The Court concludes, upon the above Findings of Fact, that the plaintiff was entitled to judgment against the garnishee for the sum of Two and 01/100 Dollars ($2.01), and that the garnishee was entitled to judgment for Twenty Five Dollars ($25.00) costs incurred by it in the preparation of its answer."

Reduced to their ultimate, the contentions of appellant for a reversal of the judgment are, first, that in its answer the garnishee failed to answer the inquiries propounded to it in the writ of garnishment, and therefore it was insufficient as an answer, and the court erred in refusing his motion for a judgment in his favor upon the pleadings; second, that it appears from the answers of garnishee that the mortgage which it held upon the stock of lumber of Cline was fraudulent and void as against him, in that it was an attempt on the part of Cline to create a lien in favor of garnishee upon a "stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of possession of said goods and control of said business, by sale of said goods by said owner," in violation of the provisions of arti-

cle 4000, Revised Civil Statutes of 1925; third, that it appears from the answers of garnishee that it bought the lumber of A. L. Cline in bulk, in violation of the provisions of article 4001, Revised Civil Statutes of 1925, and therefore such sale is void as to creditors of Cline, and that, as he was one of such creditors, he was entitled to reach the same in the possession of garnishee by means of a writ of garnishment for the payment of his debt against Cline, and the court erred in holding to the contrary.

■ We overrule the first contention. As we have already shown, the writ of garnishment issued and served upon garnishee commanded garnishee to appear before the court and answer upon oath what, if anything, it is indebted to A. L. Cline, and was at the time the writ was served upon it, and what effects, if any, of A. L. Cline it has in its possession, and had at the time the writ was served upon it, and what other persons, if any, within its knowledge, are indebted to A. L. Cline, or have effects belonging to him in their possession. Garnishee appeared as directed, and upon oath answered fully and specifically each of the inquiries propounded.

■ We overrule the second contention. The mortgage referred to in the pleadings of both parties was not set out in any of the pleas, but in the sworn controverting answer of the garnishee to the controverting plea of garnishor it was stated that A. L. Cline was not, on or prior to the 26th day of February, 1926, a retailer in the lumber business, but that he at such times was a manufacturer of lumber and selling the same at wholesale only; that such lumber was manufactured from trees and logs, which had been bought and paid for with the funds of garnishee; that such trees and logs were bought by A. L. Cline as the agent of garnishee; that, under garnishee's contract with A. L. Cline, and by the provisions and terms of the mortgage referred to, the funds derived from the sales of the lumber manufactured by Cline were to be paid directly to garnishee, and that all sales of the lumber were to be shipped through garnishee; that at the time of the execution of the mortgage it was provided therein that, in the manufacture and sale of the lumber, it was to be made by Cline as the agent of the garnishee; that said mortgage was given to secure a demand note of even date with it, payable to garnishee in the sum of $1,711.50; that at the time of the execution of the mortgage it was contemplated by garnishee and A. L. Cline that it would require additional sums of money to enable him to continue the manufacture of lumber, and that the mortgage provided, and A. L. Cline and the mortgagee agreed contemporaneously with the execution of the mortgage that garnishee would, at its discretion, make further advances to Cline; that thereafter all of the operation, contracts, and sale of said A. L. Cline by virtue of the terms of said chattel mortgage and by virtue of an oral agreement and understanding between garnishee and said A. L. Cline of even date with said mortgage, were done and performed as the agent of the said garnishee.

The foregoing answer, in effect, asserts that the instrument referred to as a mortgage provided that the property covered by it and delivered to A. L. Cline was to remain the property of garnishee and to be handled by Cline as its agent; that Cline was by its provisions and terms to transact the business for garnishee and to account to and pay over to it the proceeds from sales of the lumber.

We do not think that such instrument constitutes such mortgage as is prohibited by article 4000 of our Revised Civil Statutes of 1925. It has been uniformly held by our appellate courts that the provisions of article 4000 do not apply to such instruments as the one described in the answer of garnishee in this cause. Bowen v. Lansing Wagon Works, 91 Tex. 385, 43 S. W. 872; Clark & Boice Lumber Co. v. Commercial Nat. Bank (Tex. Civ. App.) 200 S. W. 197; Mayfield Co. v. Harlan (Tex. Civ. App.) 184 S. W. 315, on rehearing; Hall v. Keating Imp. Co., 33 Tex. Civ. App. 526, 77 S. W. 1054; Eason v. De Long, 38 Tex. Civ. App. 531, 86 S. W. 348; Mansur & Tebbetts Imp. Co. v. Beeman-St. Clair Co. (Tex. Civ. App.) 45 S. W. 729.

The Bowen Case, supra, was one in which the wagon works entered into a written contract with Bowen, by the terms of which the wagon works shipped to Bowen, at Waco, Tex., certain wagons, and by its terms it was agreed that all wagons so shipped were to remain the property of the wagon works until Bowen settled for them upon the following terms: Bowen was to give the wagon works his note for the purchase price of the wagons, and, when he sold any of the wagons, he was to forward to the works his customer's note to be held by it as collateral security for the purchase price. The note sued on was the note of Bowen, given by him for the wagons pursuant to the aforesaid agreement. The plaintiff sought a judgment upon the note and a foreclosure on the wagons shipped under the agreement; the same not having been sold by Bowen.

Bowen was engaged in the business of buying and selling, by retail, wagons, buggies, surreys, phaetons, harness, cultivators, plows, and a general implement business in the city of Waco, McLennan county, and was so engaged when he procured the wagons in question in this suit; and it was understood between him and plaintiff, at the time the contract between them was made and at the time he got possession of the wagons, that they were to be by defendant Bowen daily exposed for sale in the said business at retail and to sell them in the usual course of business; and he did keep them in his stock, and daily expose and offer them for sale by retail in Waco.

While the case was pending on appeal, the appellate court certified to the Supreme Court the following question: "Does section 17 of the assignment law of 1879, declaring that 'every mortgage, deed of trust, or other form of lien, attempted to be given by the owner of any stock of goods, wares or merchandise, daily exposed to sale in parcels in the regular course of business of such merchandise and contemplating a continuance of possession of said goods, and control of said business by sale of said goods by said owner shall be deemed fraudulent and void,' apply to the lien asserted by the plaintiff, and should it be enforced in this case?" The Supreme Court answered the question in the negative.

The Clark Case, supra, was one in which the plaintiff in the suit loaned a cotton oil mill company funds to purchase seed for its mill, and the oil mill company executed a chattel mortgage on the seed and the products manufactured therefrom. This mortgage recited that the oil mill company should, at the end of each week, make a written report to plaintiff showing the amount of seed on hand and the amount of manufactured products, and that plaintiff should retain the seed tickets showing the amount paid until the seed should be manufactured, the products disposed of, and the money received thereby applied to plaintiff's debt. In that case the Court of Civil Appeals at Texarkana held that such mortgage, despite retail sales made by the oil mill company, did not, though it had made plaintiff agent for the sale of the products, violate the statute, article 4000, and in support of its opinion the court cites the Bowen Case, supra.

In the Mayfield Co. Case, on rehearing, the Texarkana court held that the provisions of article 4000, Revised Civil Statutes 1925, do not apply to a lien resulting from reservation of title to secure the purchase money, made when the goods were sold to the storekeeper, though such reservation be construed as a chattel mortgage; that in such circumstances the seller, taking possession of the goods sold with the consent of the buyer, can hold them to the extent of the unpaid purchase price against creditors of the buyer not then having a lien on them.

■ We also overrule the third contention. Accepting the matters stated in the garnishee's answers as true, as we assume the trial court did, we find that the debt due by A. L. Cline to W. A. Grimes, which formed the basis for the judgment rendered in favor of Grimes against Cline, existed before garnishee advanced the money with which Cline purchased the logs from which he manufactured the lumber which he turned over to garnishee under the terms of the mortgage referred to, and the contemporaneous agreement made between the two, that, under such agreement, the title to the lumber and the logs from which it was manufactured was at all times in garnishee, and its taking actual possession of same, in no way violated the provisions of article 4001.

■ If, however, it should be conceded that A. L. Cline manufactured and sold lumber at wholesale only, as found by the court, there is ample authority for the further holding that the provisions of article 4001 do not apply in this case. It has been held that the provisions of said article do not apply to those who deal exclusively in goods manufactured by themselves. 27 Corpus Juris, p. 878, § 888, and authorities cited in note 69; Continental Bank v. Trabue (Tex. Civ. App.) 150 S. W. 209; Clark & Boice Lumber Co. v. Commercial Nat. Bank (Tex. Civ. App.) 200 S. W. 197.

Having reached the conclusions above expressed, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.