R. A. HALL, TRUSTEE, v. KEATING IMPLEMENT AND MACHINE COMPANY.

Decided November 18, 1903.

**Chattel Mortgage—Reservation of Title.**

A contract of sale of chattels reserving title in the vendor until paid for is a chattel mortgage, not only as against third persons, but as between the parties; the assignee of the notes for purchase price had the right, as mortgagee, to take back the property in payment or part payment of the debt secured; and where this is done without rights of lien holders, purchasers, or mortgagees intervening he takes good title as against a subsequent assignee in bankruptcy, though the debtor was then insolvent and was declared a bankrupt within four months.

Appeal from the District Court of Runnels. Tried below before Hon. John W. Goodwin.

*M. C. Smith,* for appellant.

*Etheridge & Baker,* for appellee.

KEY, ASSOCIATE JUSTICE.—Appellant, as trustee for the bankrupt estate of R. L. Maddox, brought this suit against appellee to recover certain personal property, alleged to belong to the bankrupt estate.

The defendant in its answer, in addition to a general denial, pleaded title and ownership in itself.

The case was tried without a jury and judgment rendered for the defendant. From this judgment the plaintiff has appealed. No findings of fact or conclusions of law were filed by the trial judge, but the testimony supports the statement concerning the facts made in appellee's brief; and therefore, in deference to the judgment, we adopt such statement as our findings of fact:

"On January 17, 1901, Shutler & Hotz of Chicago, Ill., acting through their State agents Keating Implement and Machine Company, sold to R. L. Maddox a carload of Shutler wagons by written contract of sale, providing the price at which said wagons were severally sold and the terms of sale (the several items aggregating about $1372.50) and binding said Maddox to execute his notes to Shutler & Hotz on the terms specified in the contract, upon receipt of the goods.

"In said contract it was provided, among other things, 'That the title to and ownership of all goods which may be shipped as herein provided, or during the current season, shall remain in and their proceeds, in case of sale, shall be the property of first party (meaning Shutler & Hotz) and subject to their order until full payment shall have been made by the undersigned in money.'

"The goods arrived at Ballinger, Runnels County, Texas, on or about February 7, 1901, and thereupon said Maddox, in pursuance of his contract so to do, executed and delivered to Shutler & Hotz his two promis-

sory notes for $686.25 each, payable at First National Bank, Ballinger, Texas, with interest at 8 per cent from August 7, 1901, until maturity, and 10 per cent thereafter. Said notes by their terms matured respectively November 15, 1901, and December 15, 1901, and represented the purchase price of the carload of wagons above referred to.

"Subsequent to the execution of the notes and before the maturity thereof, and before the transactions hereinafter mentioned, Shutler & Hotz indorsed and delivered said notes to Keating Implement and Machine Company, and thereafter, on or about October 28, 1901, W. O. Garrison, a representative of the Keating Implement and Machine Company, with said notes and contract above described in his possession, came to Ballinger endeavoring to collect said notes, they being wholly unpaid and Maddox being in an insolvent condition. At that time said representative lodged the contract with the county clerk of Runnels County, and caused same to be duly registered as a chattel mortgage. Failing to collect the notes, it was agreed that they should be settled as far as practicable by the return of the unsold wagons, credit to be made upon the notes for the value of the goods so returned. In pursuance of that arrangement, Keating Implement and Machine Company on the date referred to retook the goods remaining unsold to the value of $740.60, made an inventory of same, collected and stored them together at a particular place in Maddox's place of business, and segregated same from property belonging to Maddox, and it was then and there understood that said goods were then and there delivered to Keating Machine and Implement Company to become its property, and that Maddox thereupon became entitled to and was allowed the credit above referred to on his said indebtedness under his said notes.

"Thereafter Keating Implement and Machine Company arranged with Maddox to handle said goods as their agent without any title or interest therein passing to the said Maddox, said Maddox agreeing to sell said goods on commission for cash only, and account to said Keating Implement and Machine Company for all sales made at the invoice price of said goods with freight added, and said Maddox was to receive as his compensation such sums as he might get, over the invoice price of said goods. If any sales were made on credit, the said company was to receive the entire proceeds of such sales. After making the arrangement described, Maddox and the Keating company considered the goods as being the property of the company, and that Maddox was handling the same simply as sales agent. Subsequently, and before the transaction hereinafter referred to, Maddox sold one of the wagons on credit for $82.50, and complying with his contract, forwarded the note taken for purchase price of the wagon to the Keating company.

"About November 21, 1901, certain creditors of Maddox, including the Keating company, filed petition in involuntary bankruptcy against Maddox, charging him with having unlawfully preferred certain other creditors and thereby committing acts of bankruptcy.

"About November 23 the Keating company removed its wagons, etc.,

from the Maddox store building, same being still open for business and continuing open until some time in December. In due course Maddox filed his answer to the proceedings in bankruptcy, and thereafter on December 10, 1901, was duly adjudged a bankrupt, and on December 23, 1901, R. A. Hall was duly appointed trustee and qualified.

"After the reference of the case to the referee, the Keating company filed its claim with the referee setting up the existence of its claim and lien against the wagons and note which had been transmitted to it as the proceeds of the wagon which Maddox had sold as above described, and stating, in connection with its claim and assertion of lien, that the property in controversy was in its possession, but held subject to the order of the trustee herein.

"The trustee declined to entertain the claim of lien of the Keating company, and made demand upon it to return the goods and refused to pay any dividend upon their claim in the bankruptcy proceedings, and made no offer or attempt to adjust their lien on the goods or value the property, but it was shown upon the trial that the Keating company in taking the goods at the valuation agreed upon with Maddox, had taken the same at a fair and just valuation.

"The trustee in bankruptcy instituted suit to recover the property in controversy from the Keating company, claiming that their possession of same was acquired under circumstances constituting an unlawful preference; that their mortgage lien was void, and that the property in controversy constituted assets of the bankrupt estate for the benefit of general creditors.

"It was shown that for more than four months prior to the proceedings in bankruptcy Maddox was insolvent and that Keating company knew of his condition. It was not shown what creditors, if any, were in the same class with the Keating company, nor that if said transaction before described were allowed to stand that said company would receive a larger percentage of its debt than other creditors of the same class. It was also affirmatively shown that there was never any agreement that said chattel mortgage should not be recorded."

*Opinion.*—Without considering in detail the appellant's assignments of error, we overrule all of them and hold that the defendant's answer was not subject to the demurrer and exceptions urged against it, and that the contract between Shutler & Hotz and Maddox was a chattel mortgage under the laws of Texas, not only as against third parties, but also between the parties to the instrument. Harling v. Creech, 88 Texas, 300; Singer Manufacturing Co. v. Rios, 71 S. W. Rep., 275. From this it follows that when Shutler & Hotz assigned the notes to appellee the latter became the mortgagee and had the right to purchase the property in controversy from Maddox, the mortgagor, in payment, or part payment, of the debt secured by the mortgage; and the testimony showing that such purchase was made before the proceeding in bankruptcy was begun, the property was no part of the estate of the bankrupt.

Following the ruling of our Supreme Court we also hold that liens of this character are not within the purview of the statute invalidating mortgages attempted to be made by the owner upon merchandise daily exposed for sale in the regular course of business. Bowen v. Lansing Wagon Works, 91 Texas, 385.

We also sustain appellee's contention that such contract of sale is valid upon the instant of its execution, regardless of its registration, as against all parties except lien creditors and subsequent bona fide purchasers or mortgagees. Being valid, it can be enforced as between the parties and all others except those included in the two classes above referred to. Bowen v. Lansing Wagon Works, supra.

The contention of appellant that appellee's purchase of the property was unlawful under the provision of the bankrupt law prohibiting preferences can not be sustained. It is true that the bankruptcy statute condemns all alleged liens "which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt," but, as shown by the cases just cited, the contract between Shutler & Hotz was a valid lien. It is also true that the same statute nullifies as to creditors, transfers and incumbrances made by the bankrupt, within four months prior to the filing of the petition, if made with intent to defraud creditors; but it was not shown that the sale by Maddox to the appellee was made with such intent.

No error has been shown and the judgment is affirmed.

*Affirmed.*