MAYFIELD CO. et al. v. HARLAN & HARLAN.  (No. 1538.)*

(Court of Civil Appeals of Texas. Texarkana. March 11, 1916. On Rehearing, March 24, 1916.)

1. APPEAL AND ERROR ⬅═1010(1)—REVIEW—FINDINGS OF FACTS.

There being evidence tending strongly to support the finding that a transaction was a sale, and not a consignment of goods, that issue is not open on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3981; Dec. Dig. ⬅═1010(1).]

2. FRAUDULENT CONVEYANCES ⬅═229—BULK SALES—REMEDY BY GARNISHMENT.

The purchasers from one who sells without compliance with the Bulk Sales Law (Rev. St. 1911, arts. 3971–3973) are liable in garnishment to his creditors for the goods, or the proceeds, if resold.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 668–670; Dec. Dig. ⬅═229.]

3. FRAUDULENT CONVEYANCES ⬅═322—BULK SALES—RIGHTS OF BUYER.

One who in making a purchase, void because in violation of Bulks Sales Law, as consideration releases the seller's debt to him, cannot revive it, so as to share with the seller's other creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 981; Dec. Dig. ⬅═322.]

4. FRAUDULENT CONVEYANCES ⬅═318—BULK SALES—LIABILITY OF SECOND BUYER.

S. selling in violation of the Bulk Sales Law to M., and M. reselling to N., and taking his note, S.'s creditors cannot subject to their debts both the note and the goods.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 981; Dec. Dig. ⬅═318.]

On Rehearing.

5. CHATTEL MORTGAGES ⬅═186 — STOCK OF GOODS—RESERVING TITLE AS SECURITY IN SALE.

Rev. St. 1911, art. 3970, declaring void every mortgage or other form of lien attempted to be given by the owner of a stock of goods daily exposed to sales in parcels in the regular course of business, does not apply to a lien resulting from reservation of title to secure the purchase money, made when the goods were sold to the storekeeper; and this though article 5654 makes such a reservation of title a mere chattel mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 368; Dec. Dig. ⬅═186.]

6. CHATTEL MORTGAGES ⬅═186—UNRECORDED RESERVATION OF TITLE—RETAKING GOODS—RIGHTS OF CREDITORS AND SELLER.

Under Rev. St. 1911, art. 5654, declaring a reservation of title to chattels to secure the purchase money a chattel mortgage, void as to creditors and bona fide purchasers unless registered, the seller taking possession of the goods with the consent of the buyer can hold them to the extent of the unpaid purchase price, against creditors of the buyer not then having a lien on them, though the reservation was unrecorded.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 368; Dec. Dig. ⬅═186.]

Appeal from Smith County Court; Jesse F. Odom, Judge.

Action by Harlan & Harlan, a corporation, against the Mayfield Company and another, with garnishment against the Mayfield Company and W. E. Nunnellee. From an adverse judgment, the garnishees appeal. Reversed and rendered.

Simpson, Lasseter & Gentry, of Tyler, for appellants. Price & Beaird, of Tyler, for appellee.

HODGES, J. On December 1, 1913, the Mayfield Company, a private corporation, acquired at a bankrupt sale a stock of goods, wares, and merchandise, together with some furniture and fixtures. On the same date all of those goods, furniture, and fixtures were delivered to the possession of one M. T. Sheets, of Tyler, Tex. The value of the goods amounted to $3,100; the value of the furniture and fixtures to $800. M. T. Sheets immediately advertised in the only daily paper published in the city of Tyler, where the transaction occurred, that E. O. Sheets

had purchased through the Mayfield Company the John F. Haden & Son bankrupt stock of groceries, and would conduct a grocery business at the old stand of John F. Haden. On December 6th following, February 12, 1914, and in August of the same year the Mayfield Company and Sheets entered into different written agreements, which were offered in evidence and form a part of the findings of fact filed by the trial judge. These tend to show that the goods were delivered to Sheets upon consignment, to be disposed of by him as the agent of the Mayfield Company. The trial court, however, found that these agreements, when properly construed, were intended to constitute merely a mortgage upon the goods in favor of the Mayfield Company to secure the original price, and that the transaction between the Mayfield Company and Sheets was a sale and purchase of the goods, furniture, and fixtures for the aggregate sum of $3,900. M. T. Sheets took charge of the goods, and, so far as the evidence discloses, conducted it according to the usual methods of carrying on a retail grocery business. During the year 1914 he incurred debts to various parties among whom was Harlan & Harlan, a private corporation, the appellee in this suit. After deducting payments which had been made to Harlan & Harlan at different times, Sheets owed that company when he quit business the sum of $103.40. On November 25, 1914, the Mayfield Company, by agreement or otherwise, took charge of all the goods which Sheets then had on hand which had been purchased from it, and closed the house. The only goods in the building at that time which were not taken possession of by the Mayfield Company consisted of a small lot amounting in value to the sum of $90 according to an estimate then made, but which were subsequently appraised at $35. At the time of this transaction Sheets was indebted to the Mayfield Company in the sum of $2,250.20, and owed other debts to the amount of $600. On the 28th of November the Mayfield Company sold and delivered to the appellant W. E. Nunnellee this entire stock of goods, together with the furniture and fixtures. The goods were invoiced in that sale at $985.17; the fixtures at $519.20. The consideration paid by Nunnellee was part cash and a promissory note amounting in the aggregate to over $400. In January following Harlan & Harlan filed suit in the justice court against Sheets for the $103.40 due on account, and at the same time sued out writs of garnishment which were served upon both the Mayfield Company and Nunnellee. The Mayfield Company answered, denying that it owed Sheets anything, or had any effect belonging to him in its possession. By way of special answer, however, it alleged that previous to that time it had delivered to M. T. Sheets on consignment a stock of goods, wares, and merchandise, and that subse-

quently Sheets, in order to pay to the Mayfield Company a part of his debt, had turned over and delivered to it goods, wares, and merchandise inventoried at about $900, of the probable value of $600, which were a part of the goods theretofore consigned to Sheets by the Mayfield Company; that this amount was credited on the account of Mayfield Company against Sheets; that prior to the time the writ of garnishment was served upon it the Mayfield Company had transferred and sold the merchandise received from Sheets to other parties, and had no interest in or claim to the merchandise. Nunnellee answered, denying that he owed Sheets anything or had in his possession any effects belonging to Sheets, except a small amount of merchandise appraised at $35; that before the service of the writ of garnishment a judgment was rendered against him in favor of I. H. Crutcher & Son in a suit similar to the one then pending for an amount greatly in excess of the $35, and, if Crutcher's judgment is sustained, the garnishee would have nothing belonging to Sheets. These answers were controverted by Harlan & Harlan.

In a trial before the court a judgment was rendered in favor of Harlan & Harlan against the Mayfield Company, finding as facts that at the time the writ of garnishment was served Nunnellee had in his hands effects belonging to Sheets consisting of a stock of groceries, goods, wares, and merchandise of the value of $985.17; that Mayfield Company had in its possession a promissory note executed and delivered to it by Nunnellee for the stock of goods in the sum of $450. It was ordered that Mayfield Company deliver up to the sheriff, or any constable of Smith county, Tex., presenting to it an execution in favor of the plaintiff Harlan & Harlan, the note of Nunnellee, and that Nunnellee deliver the effects, or so much thereof as was necessary to satisfy the execution. Both the Mayfield Company and Nunnellee have appealed.

[1, 2] In one group of assigned errors the appellants contend that the evidence shows that the Mayfield Company had never parted with the title to the goods when delivered to Sheets; that such delivery was a mere consignment to an agent, and that the Mayfield Company had a right to retake these goods at any time with the consent of Sheets. That contention is based upon the various written agreements which were offered in evidence. The court's finding to the contrary disposes of that issue of fact. The dealings between the Mayfield Company and Sheets were much like those which usually occur between a vendor and purchaser, and in many respects unlike those which generally take place between a principal and his agent. The entire absence of any stipulation in those written agreements fixing the compensation which Sheets was to have for handling the goods, when considered in connection with his man-

ner of advertising and conducting the business, all tend strongly to support the findings of the trial court. It is conceded that the Mayfield Company took the goods from Sheets on the 25th day of November, 1914, without complying with the requirements of articles 3971, 3973 of the Revised Civil Statutes, commonly known as the "Bulk Sales Law," and that its purchase from Sheets was void as against the latter's creditors. The liability of the Mayfield Company to those creditors for the goods remaining in its hands, or their proceeds if sold, in a proceeding of this character, is settled by a recent decision of our Supreme Court. Owosso Carriage & Sleigh Co. v. McIntosh & Warren (Sup.) 179 S. W. 257. We deem it unnecessary to add anything to what is said in that opinion.

[3] The Mayfield Company insists that the stock of goods received by it from Sheets was insufficient to satisfy all of the creditors of Sheets, and that, if it is liable upon the ground that its purchase was unlawful, nevertheless Harlan & Harlan is not entitled to collect its entire claim; that it should share with other creditors of Sheets a part of the loss resulting from the insufficiency of the assets to satisfy his indebtedness. This proceeding is not one in which we can enforce an equitable distribution of the assets of an insolvent debtor. We are not referred to any evidence showing that Sheets was, in fact, insolvent, or that the Mayfield Company will lose its debt unless such a distribution is made. It may be that in its purchase from Sheets the Mayfield Company released, in whole or in part, whatever debt Sheets owed it. If so, it cannot now revive that claim and insist on sharing with other creditors the right to a distributive portion of the assets of Sheets. The contract by which it secured possession of the goods from Sheets was unlawful; and the law will leave the parties just where they placed themselves.

We therefore conclude that the judgment against the Mayfield Company should be affirmed.

[4] But the appellant Nunnellee occupies a different situation. He purchased from the Mayfield Company, and gave his promissory note in part payment. Assuming that goods in the hands of a vendee of one who has purchased in violation of the "Bulk Sales Law" may be reached through garnishment proceedings by an aggrieved creditor, it would be manifestly unjust to so hold under the circumstances presented by the record before us. The appellee recovered a judgment against the Mayfield Company requiring it to deliver to the proper officer the note by Nunnellee for the goods, and that judgment is here affirmed. Appellee is not entitled to subject both the note and the goods to its debt. Armstrong v. Elbert, 14 Tex. Civ. App. 141, 36 S. W. 139, and cases cited. The record further shows that the goods held by Nunnellee other than those for which the note was given had been previously garnished by another creditor of Sheets.

The judgment as to Nunnellee will therefore be reversed, and judgment here rendered in his favor.

### On Rehearing.

[5, 6] After considering the arguments presented and the authorities referred to in the appellants' motion for a rehearing, we have concluded that we erred in affirming the judgment rendered against Mayfield Company. Assuming, as the trial court did, that the contracts entered into between Mayfield Company and Sheets had the effect of creating a mortgage or lien in favor of Mayfield Company for the purchase price of the goods delivered to Sheets, that fact alone was sufficient to place those goods, when returned to Mayfield Company, beyond the reach of the writ of garnishment afterwards served. It is true that article 3970 of the Revised Civil Statutes makes void "every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business." But in the case of Bowen v. Lansing Wagon Co., 91 Tex. 385, 43 S. W. 872, our Supreme Court has determined that this article of the statutes has no effect upon mortgages or liens resulting from a reservation of title to secure the purchase money made at the time the goods are sold. It is further held that article 5654, which makes all reservation of title to or property in chattels as security for the purchase money mere chattel mortgages, does not affect the validity of such liens. Such reservations are void only as to creditors and subsequent purchasers in good faith without actual or constructive notice of the existence of the lien. If Mayfield Company had any lien in this instance, it arose at the time the goods were purchased by Sheets, and by reason of a reservation of the title to the goods to secure the purchase money. Such a lien or mortgage was void only as to the creditors of Sheets and those who subsequently purchased from him without actual or constructive notice. At the time Sheets returned the goods to Mayfield Company in part payment of his debt Harlan & Harlan had acquired no lien and had taken no legal action which would place it in that class of creditors entitled to the protection of article 5654. Bowen v. Lansing Wagon Co., supra; Hall v. Keating Implement Co., 33 Tex. Civ. App. 526, 77 S. W. 1054; Eason v. DeLong, 38 Tex. Civ. App. 531, 86 S. W. 348; Mansur & Tebbetts Implement Co. v. Beeman-St Clair Co., 45 S. W. 729.

The writ of garnishment was sued out after Mayfield Company had secured possession of the goods and held whatever title had theretofore been held by Sheets. The service

of this writ could have no retroactive effect. The attitude of Harlan · & Harlan must be determined by its status at the time Sheets parted with his title and possession to Mayfield Company. If the mortgage was valid as between Mayfield Company and Sheets, and there is no creditor who can assail its validity, it follows that the goods in the hands of Mayfield Company were not subject to the writ at the time of its service. The evidence shows that the debt due Mayfield Company by Sheets was greatly in excess of the value of the goods he returned. What Mayfield Company might have accomplished by a judicial proceeding in subjecting those goods to the· payment of its debt against Sheets is not illegal when done by the parties themselves without the perpetration of any fraud or wrong toward others.

The. judgment heretofore· rendered affirming that of the trial court as to Mayfield Company will be reversed, and judgment will be here rendered in favor of the appellant Mayfield Company, together with all ·costs both of this court and of the court below.

---

⊝⊸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.