## COMMERCIAL CREDIT CO. v. SCHLEGEL-STORSETH MOTOR CO. et al.
### (No. 1276—5321.)

Commission of Appeals of Texas, Section A. Feb. 5, 1930.

Turner, Culton & Gibson, of Amarillo, for plaintiff in error.

Hill & Engledow, of Shamrock, and Stone & Guleke, of Amarillo, for defendants in error.

HARVEY, P. J. This suit was brought by the plaintiff in error, the Commercial Credit Company, against the Schlegel-Storseth Motor Company for debt; and against the defendant in error the Farmers' & Merchants' State Bank of Shamrock for the conversion of two certain automobiles, upon which the plaintiff in error claims a lien to secure the payment of the debt sought to be recovered of the motor company. The value of the automobiles, alleged to have been converted by the bank, is sought to be recovered of the bank. The trial court rendered judgment in favor of the plaintiff in error against the motor company for the amount of the debt sued for; but rendered judgment in favor of the bank on the cause of action asserted against the latter. The motor company makes no complaint of the judgment. The plaintiff in error appealed, and the judgment of the trial court has been affirmed by the Court of Civil Appeals.

The facts are substantially as follows:

At the time of the several occurrences hereinafter mentioned the motor company was engaged in the business of selling automobiles, at retail. The company's place of business was located at Shamrock, Tex. The motor company contracted for the purchase of the two automobiles in controversy, from a wholesale dealer at Amarillo. The motor company was to pay cash for the automobiles. The vendor drew a draft on the motor company for the purchase price agreed upon, and forwarded it to the Farmers' & Merchants' State Bank of Shamrock, for collection. The plaintiff in error, at the request of the motor company, paid the draft. At the time the draft was paid, and in the same transaction, the motor company promised to pay to the plaintiff in error, three months after date, the amount paid on the draft by the plaintiff in error, with interest from date; and the motor company executed a bill of sale to the plaintiff in error for the automobiles; and also executed an instrument which is denominated a "Trust Receipt," which provided, in substance, that the motor company was to take and hold possession of the automobiles, as trustee for the plaintiff in error, and, as such trustee, sell them in the regular course of the motor company's business, and turn over the proceeds of sale to the plaintiff in error as pay-

ments on the motor company's said indebtedness. In the last-mentioned instrument, the title to the automobiles was expressly reserved in the plaintiff in error; and it was also provided that, in case the debt of the motor company was not paid at maturity, the plaintiff in error could sell the automobiles at public or private sale, without having same at the place of sale, and apply the proceeds as a credit on the motor company's debt. The Farmers' & Merchants' State Bank received actual notice of this transaction at the time it occurred. The "Trust Receipt" was not placed of record, however, until after the bank took possession of the automobiles as hereinafter shown.

The motor company took possession of the automobiles, and they were daily exposed for sale, in the regular course of the company's business. Afterwards, while the automobiles still were so exposed for sale, the motor company became indebted to the Farmers' & Merchants' State Bank in the sum of $2,535; and to secure this debt the former executed a chattel mortgage on the two automobiles. It was contemplated by the parties to the mortgage that the motor company should remain in possession of the automobiles, and expose them for sale, as before. This mortgage contained the usual provisions authorizing the bank, on default of payment of the debt at maturity, to take possession of the automobiles, sell them, and apply the proceeds to the debt. When this debt fell due, the bank took possession of the automobiles, sold them, and applied the proceeds as a credit on the debt. The jury has found that the value of the automobiles, at the time, was $1,890. The amount of the debt of the motor company to the plaintiff in error exceeds this amount.

■ Article 4000 of the statutes (Rev. St.) provides: "Every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void."

It is contended by the bank that the "Trust Receipt," held by the plaintiff in error, constitutes an attempt by the motor company to give a lien on the automobiles, in contravention of the above statute. The statute does not apply to the transaction in which the "Trust Receipt" was executed. Prior to the payment of the purchase price, the title to the automobiles remained in the vendor, the wholesale dealer. The motor company was not the "owner" of the automobiles, within the meaning of the statute. The execution of the bill of sale to the plaintiff in error, contemporaneously with the payment of the

purchase money draft by the latter, had effect to transfer to the latter the right held by the motor company, under the sale contract with the wholesale dealer, to acquire title to the automobiles by paying the purchase price. Title to the automobiles passed from the wholesale dealer to the plaintiff in error when the purchase-money draft was paid. Being then the holder of the title, the plaintiff in error had the right to reserve same as security for the purchase money which the motor company agreed to pay to the plaintiff in error for the automobiles. Bowen v. Lansing Wagon Works, 91 Tex. 385, 43 S. W. 872.

■ Article 5489 provides: "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Nothing in this law shall be construed to contravene the landlord and tenant law."

The "creditors" contemplated by this statute are those persons whose claims, upon certain conditions, are charged by law upon the property covered by the instrument described in the statute. The bank, therefore, is not a "creditor" of the motor company, within the meaning of the statute. Nor is it a "bona fide purchaser," which term, as used in this statute, embraces a holder of a contract lien. The bank, at the time the motor company executed the chattel mortgage to it, had actual notice of the plaintiff in error's rights in the automobiles. Having this notice, the bank could not become a "bona fide purchaser" of the automobiles, within the meaning of this statute. Bowen v. Lansing Wagon Works, supra. For this reason, we hold that the bank is not protected under this statute, irrespective of the question as to whether or not, in any event, the bank, in view of the provisions of article 4000, could be regarded as a lienholder, either in good faith or otherwise.

We recommend (a) that the judgment of the trial court, in so far as it denies the plaintiff in error a recovery against the bank, and that of the Court of Civil Appeals affirming same, be reversed; (b) that judgment be here rendered in favor of the plaintiff in error against the bank for the sum of $1,890, the value of the automobiles as found by the jury, together with 6 per cent. interest thereon from December 4, 1925, the date of the conversion.

CURETON, C. J. Judgments of the district court and of the Court of Civil Appeals in part reversed and rendered, and in part affirmed, as recommended by the Commission of Appeals.