INTERNATIONAL HARVESTER CO. OF
AMERICA v. SMITH.

No. 9703.

Court of Civil Appeals of Texas. San
Antonio.

Jan. 29, 1936.

Rehearing Denied March 4, 1936.

Dickson & Huck, of San Antonio, for plaintiff in error.

M. A. Childers, of San Antonio, and O. W. Percy, of George West, for defendant in error.

MURRAY, Justice.

Plaintiff in error, International Harvester Company of America, instituted this cause against W. A. Smith, as sheriff and tax collector of Live Oak county, Tex., seeking to recover the value of one McCormick-Deering Farmall tractor, No. QC66166, alleged to have been converted by the defendant in error, Smith.

. The plaintiff in error and the defendant in error were, respectively, plaintiff and defendant in the court below, and they will here be designated as they were in the trial court.

The plaintiff, International Harvester Company of America, a corporation, was engaged in the wholesale business of selling farm implements. D. F. Orts & Son, a partnership, was engaged in the retail business of selling farm implements, and was the local dealer at Three Rivers, in Live Oak county, Tex., for the Harvester Company. The tractor herein involved was shipped by the Harvester Company to its local dealer, D. F. Orts & Son, under and subject to the provisions of a conditional sales contract entered into by and between the Harvester Company and D. F. Orts & Son, and this conditional sales contract contained, among others, the following provision:

"The title to all goods shipped under this contract, with right of repossession for default, is reserved by the Company until the Purchaser has made full payment in cash for all of said goods and for all notes given therefor. Prior to full settlement in cash the Purchaser shall have no right to sell or dispose of any goods delivered hereunder except for value received in the ordinary course of trade and upon the express condition that prior to the delivery of any of said goods to a customer the Purchaser shall secure from said customer a full settlement in cash or good and bankable notes and that the proceeds of all resales shall be considered the property of the Company in lieu of the goods so sold and held in trust for it and subject to its order, as provided in paragraph four hereof, until all sums due under this contract have been fully paid. At any time on request the Purchaser will give the Company's representatives full information regarding goods on hand, goods sold and the proceeds thereof, to enable it to ascertain and enforce its reserved rights under this clause. Nothing herein shall release the Purchaser from payment for all goods ordered and delivered hereunder and after delivery to him said goods shall be held at his risk and expense in respect to loss or damage from any cause and taxes and charges of every kind."

In May, 1932, D. F. Orts & Son became insolvent, and was in failing circumstances. On May 10, 1932, the Harvester Company and D. F. Orts & Son entered into a written agreement wherein it was recited that D. F. Orts & Son was indebted to the Harvester Company in 'a sum in excess of $14,000, and that, in keeping with the provisions of the conditional sales contract, D. F. Orts & Son executed a bill of sale to the Harvester Company, to all International Harvester Company machines, repairs, motortrucks, tractors, or other property sold, under the conditional sales contract, to D. F. Orts & Son. By authority of this bill of sale, and with consent of the members of the partnership of D. F. Orts & Son, the Harvester Com-

pany repossessed, along with other property, three Farmall tractors. These tractors were removed from the place of business of D. F. Orts & Son to a lot owned by one B. C. Paul. They were later placed upon the depot platform. Q. D. Quillan, a dealer for the Harvester Company in the town of Pleasanton, gave the Harvester Company an order for three Farmall tractors, and was instructed by A. G. Calhoun, an agent of the Harvester Company, to go to Three Rivers and remove the three repossessed Farmall tractors, located there, to his place of business at Pleasanton.

On or about the 23d day of May, 1932, Quillan took two trucks and several hands and went to Three Rivers for the purpose of hauling these three tractors to Pleasanton. He located the three tractors on the depot platform about 8 p. m., and at once began to load them on the trucks. When he had completed the loading of one tractor, he was stopped by Mr. Coquat, the mayor of Three Rivers, who told Quillan that there were taxes due the city on the tractors, and that he would not be permitted to move them. Shortly thereafter, defendant, W. A. Smith, drove up and introduced himself to Quillan as sheriff and tax collector of Live Oak county, and told him that there were taxes due on the tractors to the county and state, and that he would not be permitted to move the tractors until these taxes were paid. Quillan informed both the mayor and the sheriff that he had purchased these tractors from the Harvester Company, that he knew nothing about the taxes, and that he desired to move the tractors to Pleasanton. He was again informed that he would not be permitted to do so. He then asked leave to go and telephone to the Harvester Company to find out what to do. Permission was given him, and he went to a telephone for the purpose of telephoning. He returned, and ultimately he was permitted to remove the tractor that he had loaded to Pleasanton, and the other two tractors were left on the platform. Just what the arrangements were is a matter of controversy and will be discussed later. One of the tractors remaining on the platform was levied upon by the defendant, Smith, and on or about the 2d day of June, 1932, was sold for taxes due by Orts & Son, and the money derived from said sale, being the sum of $250, was applied on the state and county taxes due by Orts & Son there be-

ing a small balance left after the payment of the taxes.

The tractor was sold by Smith, at public sale, to one Joe Spacek, and was afterwards badly damaged in a fire.

The trial was had before the court without a jury, and the trial judge rendered judgment in favor of the defendant and that the plaintiff take nothing by reason of its suit. The International Harvester Company presents this appeal.

■ The trial judge made and filed his findings of fact and conclusions of law. Plaintiff here asks that these findings of fact and conclusions of law be stricken out because not filed within five days after plaintiff had called to the attention of the trial judge, for the second time, its request for findings of fact and conclusions of law. Plaintiff bases its contention upon the provisions of article 2247, as amended by the Acts of 1931, c. 76, § 1 (Vernon's Ann.Civ.St. art. 2247).

The weakness in plaintiff's contention is its failure to show that at the time judgment was rendered, or within a reasonable time thereafter, it requested the trial judge to file his findings of fact and conclusions of law. It has always been the rule in this state that, before a party appealing could complain of the trial judge's failure to timely make and file his findings of fact and conclusions of law, it must be shown that either at the time such judgment was rendered, or within a reasonable time thereafter, the party complaining requested the trial court to make and file his findings of fact and conclusions of law, and we see no reason why this fair and just rule should be changed by reason of the amendment to article 2247 by the Acts of 1931.

Plaintiff's request to strike out the trial judge's findings of fact and conclusions of law will be overruled.

Plaintiff excepts to many of the findings of fact and conclusions of law made by the trial judge, but, as the material facts in this case are almost undisputed, we will not discuss each one of these exceptions separately.

■ The first question with which we are confronted is whether or not the sales contract, executed between plaintiff and Orts & Son, was sufficient, under all the circumstances, to reserve the legal title to these tractors in the Harvester Company. It is contended by defendant that such a

reservation of title in a sales contract is void under the provisions of article 4000, R.S.1925, which reads as follows: *"Chattel Mortgage.* Every mortgage, deed of trust or other form of· lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void."

Defendant's exact contention is that under the provisions of article 5489, as follows: *"Vendor's Security.* All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Nothing in this law shall be construed to contravene the landlord and tenant law," all reservations of the title to or property in chattels, as security for the purchase money thereof, are to be regarded as chattel mortgages, that article 4000 declaring that every mortgage ·on any stock of goods daily exposed to sale shall be void, and that therefore the conditional sales contract executed by the Harvester Company and Orts & Son was void by reason of these two articles of the statute. However, Judge Denman, speaking for the Supreme Court, in Bowen v. Lansing Wagon Works, 91 Tex. 385, 43 S.W. 872, definitely held that article 5489, being passed in the year 1885, and subsequent to the time that article 4000 was enacted, to wit, 1879, could not be regarded as broadening the meaning of article 4000, wherein it provides, in effect, that any mortgage, deed of trust, or other form of lien attempted to be given by the owner of· any stock of goods daily exposed to sale in parcels shall be void so as to include a conditional sales contract wherein the vendor reserves title to goods sold, but that the expression "a chattel mortgage," as used in article 4000, must be given the meaning that was attributed to it at the time article 4000 was enacted. This holding by the Supreme Court has been followed consistently up to the present time. Mansur & Tebbetts Implement Co. v. Beeman-St. Clair Co. (Tex.Civ.App.) 45 S. W. 729; Fairbanks v. Simpson (Tex.Civ.

App.) 28 S.W. 128; Mayfield Co. v. Harlan &. Harlan (Tex.Civ.App.) 184 S.W. 313; Park v. South Bend Chilled Plow Co. (Tex.Civ.App.) 199 S.W. 843; In re Raney (In re Texas Moline Plow Co.) (D.C.) 202 F. 1003; In re Varner (D.C.) 297 F. 337; Grimes v. Huntsville ·State Bank (Tex.Civ.App.) 12 S.W.(2d) 1087 (writ refused); Commercial Credit Co. v. Schlegel-Storseth Motor Co. et al. (Tex. Com.App.) 23 S.W.(2d) 702.

There is some dicta in the majority opinion of this court in the case of the City of San Antonio v. Chas. M. Stieff, Inc., 83 S.W.(2d) 357, expressing a contrary view, which we now concede to be clearly wrong, and such dicta should be disregarded.

Defendant cites Texas Bank & Trust Co. v. Teich (Tex.Civ.App.) 283 S.W. 552, as authority for the contention that the transfer of the tractor from Orts & Son to plaintiff was void under the provisions of article 4000. We do not so construe this decision. In the Teich Case a trust receipt was given by the vendee to the bank. A trust receipt thus given is within the provisions of article 4000. It is a lien attempted to be created upon a stock of goods daily exposed to sale in parcels, while a conditional sales contract is not a lien attempted to be created by the owner of a stock of goods, but is a reservation of title by the vendor.

■ Defendant also contends that the conditional sales contract was insufficient to show a reservation of title in this tractor, because this particular tractor was not' specifically described in the contract. This exact contention is properly decided against defendant's contention in International Harvester Co. v. Poduska, 211 Iowa, 892, 232 N.W. 67, 71 A.L.R. 973.

■ A conditional sales contract· containing a reservation of title, not being· in any wise affected by article 4000, is clearly binding upon the parties to such contract, and especially is this true where such sales contract is recorded in the county clerk's office in the county where the chattels are located, as was done in the case at bar. International Harvester Co. v. Poduska, supra;· 9 Tex.Jur. 153.

■ Plaintiff having repossessed the tractor involved in this suit, under its perfectly valid conditional sales contract, and having removed the tractor from the place of business of Orts & Son, and hav-

ing fully taken same into its own possession, said tractor could not be levied on and sold for delinquent taxes due by Orts & Son. The state and county has no lien upon personal property for taxes due by the owner until same has been levied upon. 61 C.J. 918; In re Brannon (C.C.A.) 62 F.(2d) 959; Cassidy Southwestern Commission Co. v. Duval County (Tex. Com.App.) 3 S.W.(2d) 416. The Harvester Company having become the owner of the tractor before any levy was made, the tractor could not lawfully be sold to pay the taxes due by Orts & Son.

■ It is contended by the defendant that the provisions of article 4001, R.S. 1925, known as the Bulk Sales Law, are sufficient to render void the action of the Harvester Company in repossessing itself of two-thirds of the entire stock of Orts & Son, without complying with the provisions of this statute. This proposition was definitely decided contrary to defendant's contention in the case of Mayfield Co. v. Harlan & Harlan (Tex.Civ.App.) 184 S. W. 313.

The facts in that case are almost exactly similar to the facts in this case, and there the court definitely held that a vendor who had reserved title to a stock of goods could lawfully repossess the stock of goods without complying with the Bulk Sales Law and that a creditor of the vendee could not subject the repossessed stock of goods to a payment of his claim.

■ Defendant further contends that he was authorized by the provisions of article 7272, R.S.1925, as amended by Acts 1931, c. 141, § 1 (Vernon's Ann.Civ.St. art. 7272), to levy upon this tractor and sell it for delinquent taxes of Orts & Son. We cannot agree with this contention. Defendant made no levy upon this property until after title had reverted to the Harvester Company, and therefore he had no authority to sell same under the provisions of either article 7266 or article 7272, as amended. Cassidy Southwestern Commission Co. v. Duval County, supra.

■ Defendant, Smith, further contends that he could not be held liable for the conversion of this tractor, because he was authorized to levy upon same by Q. D. Quillan at the time the levy was made. This contention is supported by a finding of fact of the trial judge to the effect that plaintiff allowed defendant to "sell said property as the property of D. F. Orts & Son, to satisfy delinquent taxes due by said mercantile firm." We think that this finding is so contrary to the great weight and preponderance of the testimony as to require that same be set aside. This finding could only be supported by what happened at the time Quillan was attempting to load the tractors on to his trucks, and at which time defendant made the levy. The evidence shows that Quillan came from Three Rivers for the purpose of hauling these three tractors to the town of Pleasanton, that he located them and had finished loading one when stopped by the mayor of Three Rivers and the defendant, Smith. He was told that he would not be permitted to move any one of the tractors, and the mayor of Three Rivers testified that Quillan would have been arrested if he had disobeyed instructions not to move these tractors. Quillan then asked for permission to telephone to the Harvester Company, which he apparently did, and returned with the proposition, according to the mayor of Three Rivers, that the mayor levy on one tractor, Smith levy on another tractor, and that he be permitted to take away the third tractor; that the mayor then levied on one tractor, Smith levied on another tractor, and that Quillan was permitted to take away the third tractor. It is not shown by the evidence that this proposition was made by any one authorized to represent the Harvester Company concerning such matters. Quillan did not admit that he made such a proposition, and Smith testified that he paid very little attention, and did not remember just what Quillan did say. It occurs to us that the most this evidence shows is that Quillan was first denied the privilege of moving any one of these tractors, but, after some discussion, was ultimately permitted to move one of said tractors, and certainly this transaction could not be regarded as a compromise agreement authorized by the Harvester Company whereby it consented that two of the tractors lawfully belonging to it could be sold to pay the delinquent taxes of another person or firm. The evidence shows that at the time Smith levied on this tractor it had been removed from the place of business of Orts & Son, and was in the possession of Quillan, who stated that he had purchased the tractor from the Harvester Company. This was sufficient to put Smith on notice that the tractor no longer belonged to Orts & Son and that it was in the hands of third parties who were as-

serting ownership thereto. In making a levy under these circumstances, Smith did so at his own peril, and the burden was upon him to show by a preponderance of the evidence that he had a lawful right to make the levy upon the tractor to pay the taxes due by Orts & Son, which burden he has not discharged. Campbell v. Ulch, 24 Tex.Civ.App. 618, 60 S.W. 272; Railey v. Hopkins, 62 Tex.Civ.App. 544, 131 S.W. 624; 26 R.C.L. § 25, p. 1113, and § 31, p. 1120.

Accordingly, the judgment of the trial court will be reversed and this cause remanded for a new trial.