## C. I. T. CORPORATION v. HAYNIE.
### No. 1945.

Court of Civil Appeals of Texas. Eastland.

Nov. 10, 1939.

Rehearing Denied Jan. 12, 1940.

Smith & Eplen, of Abilene, for appellant.
Hudson Smart, of Abilene, for appellee.

FUNDERBURK, Justice.

As incident to a suit by C. I. T. Corporation against Wm. A. Turnidge, seeking judgment for debt and possession of particular merchandise, the State District Court, through a receiver, took possession of such property, on April 18, 1938. Subsequently on the same day, Wm. A. Turnidge, under the trade name of "Army Store" and/or "Turnidge Appliance Store," filed a petition in voluntary bankruptcy. R. W. Haynie, the trustee in bankruptcy, on June 4, 1938, filed a petition of intervention in said State Court claiming said property as assets of the bankrupt's estate and seeking recovery of the possession thereof. C. I. T. Corporation, in the attitude of a defendant as to the intervener, in addition to defensive pleadings, asserted a cross-action against the intervener claiming ownership of the property, and in the alternative a lien thereon. By agreement the property was sold and the proceeds, in the sum of $1,600, is held in lieu of the property.

In a nonjury trial judgment was rendered for said intervener and against C. I. T. Corporation, reciting, in part, that it was the "opinion of the court that this court has no jurisdiction over the property involved and that the proceeds of the same should be delivered to the said trustee in bankruptcy." It was, "therefore, ordered, adjudged and decreed that the district clerk deliver to R. W. Haynie, Trustee in Bankruptcy, the proceeds of the sale of said chattels, being the sum of $1600, and it is further ordered, adjudged and decreed that this action be and is hereby dismissed" etc. The plaintiff C. I. T. Corporation has appealed.

There was no question involved regarding the trial court's jurisdiction. The judgment disposed of the controversy on its merits, and we shall treat the purported dismissal of the action as surplusage, or at any rate as not affecting the real nature of the action and judgment as stated.

We regard the pleadings as presenting no issue relating to the custody of the property in controversy at the particular time of filing the petition in bankruptcy. The receiver of the State Court had taken possession of the property from Turnidge and the fact is of no importance, we think, that all of the property may not have been removed from the premises before the petition in bankruptcy was filed. The appearance of appellee in the State Court as an intervener in the light of the allegations of his petition, was conclusive, we think, that the recovery of possession sought by him related to property of which he had not acquired the custody for the bankruptcy court.

Two questions are presented for decision. The first is whether or not a "reservation of the title to or property in chattels [effective by means of trust receipts, executed in compliance with previous contract], as security for the purchase money thereof" which R.S.1925, Art. 5489, declares "shall be held to be chattel mortgages", are such mortgages or liens as R.S.1925, Art. 4000, Vernon's Ann.Civ.St. art. 4000, under the circumstances therein stated, declares to be "fraudulent and void". The other is whether or not in Texas the "rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied" which sec. 47, sub. a, of the Bankruptcy Law, 11 U.S.C.A. § 75, sub. a, confers upon a trustee in bankruptcy, include the right, remedy or power of such trustee to recover the possession of chattels from a mortgagee or lienee in holding possession under a valid but unregistered mortgage or lien.

The first question was answered by the Supreme Court in Bowen v. Lansing Wagon Works, 91 Tex. 385, 43 S.W. 872, 874. According to that decision, although a "reservation of the title to, or property in chattels as security for the purchase money thereof" be held to be a chattel mortgage and subject to all the provisions of R.S. 1925, Arts. 5489 and 5490, it is not subject to the provisions of R.S.1925, Art. 4000. That is to say, such a mortgage or lien, even though thereafter the chattels constitute a "stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular

course of business" etc., is not by said Art. 4000 declared to be fraudulent or void. In terms of the reasons supporting it, the proposition may be otherwise stated thus: A lien consisting of a bona fide "reservation of the title to or property in chattels, as security for the purchase money thereof" which Art. 5489 declares to be a chattel mortgage, is not a chattel mortgage given by an "owner of any stock of goods, wares or merchandise daily exposed to sale" etc. within the meaning of said Art. 4000.

The decision in Bowen v. Lansing Wagon Works, supra, so far as we have found, has never been overruled or modified by any subsequent decision of the Supreme Court. The holding upon the point stated has been followed in a number of decisions of the Courts of Civil Appeals, at least one decision by the Commission of Appeals and one or more decisions of Federal courts. Commercial Credit Co. v. Schlegel-Storseth Motor Co., Tex.Com.App., 23 S.W.2d 702; Universal Credit Co. v. Vance, Tex.Civ. App., 117 S.W.2d 508, 511; International Harvester Co. v. Smith, Tex.Civ.App., 91 S.W.2d 827, 830; Grimes v. Huntsville State Bank, Tex.Civ.App., 12 S.W.2d 1087; Park v. South Bend, etc., Co., Tex.Civ. App., 199 S.W. 843, 844; Mayfield Co. v. Harlan & Harlan, Tex.Civ.App., 184 S.W. 313; Hall v. Keating Implement, etc., Co., 33 Tex.Civ.App. 526, 77 S.W. 1054, 1056; B. F. Avery & Sons v. Waples, 19 Tex.Civ. App. 672, 49 S.W. 151; In re Varner, D. C., 297 F. 337.

The pleadings presented no issue that the purported reservation of title in C. I. T. Corporation as security for the purchase price of the radios and other merchandise involved was merely simulated, or only colorable. The action brought by appellee challenged the validity of the reservation of title and the taking possession of the property by appellant under the terms of its contract with Turnidge, solely on the ground that such reservation and act of taking possession were void.

Upon the authorities above cited, it is our conclusion that the reservation of title was not void but valid, unless appellee showed that he occupied the position of a (lien) creditor, a bona fide purchaser, or the right to recover possession by virtue of authority conferred under the provisions of 11 U.S.C.A. § 75, sub. a, hereafter to be noticed.

Upon the second question, it may be well to consider, preliminarily, the applicable provisions of law as existing prior to the amendment of June 25, 1910 of section 47 of the United States bankruptcy statutes, 11 U.S.C.A. § 75, sub. a, in order to determine the change, if any, and the nature thereof effected by said amendment.

In this State, chattel mortgages though unregistered, were valid as between the parties thereto and all others, except "subsequent purchasers and mortgagees or other lien holders in good faith." Article 5490. The law in that respect has not been changed. The proposition is still sound that one who has not acquired a lien by process of law on chattels, claimed (by another) under a prior, unrecorded, mortgage is not a creditor within the meaning of the statute regarding chattel mortgages, and is not entitled to protection as such. Overstreet v. Manning, 67 Tex. 657, 4 S.W. 248; Grace v. Wade & Mains, 45 Tex. 522, 527; Biccochi v. Casey-Swasey Co., 91 Tex. 259, 270, 42 S.W. 963, 66 Am.St.Rep. 875; Bowen v. Lansing Wagon Works, supra; Commercial Credit Co. v. Schlegel-Storseth Motor Co., Tex.Com.App., 23 S.W.2d 702. Before said amendment of 1910, presently to be noticed, it was settled that an adjudication in bankruptcy (operative as of the time of filing the petition in bankruptcy) would not have the effect to give a trustee in bankruptcy the status of a lien creditor as to valid, although unregistered, mortgages or other liens. York Mfg. Co. v. Cassell, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782.

Said amendment provides that "trustees, as to all property in custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." The first part of the provision conferring upon the trustee the "rights, remedies, and powers of a creditor holding a lien" etc. is by its own terms applicable only in cases wherein the property is in the custody, or comes into the custody, of the bankruptcy court. In such case the rights, remedies and powers accrue as of the time of filing the petition in bankruptcy. Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50,

60 L.Ed. 275; Carey v. Donohue, 240 U.S. 430, 36 S.Ct. 386, 60 L.Ed. 726, L.R.A. 1917A, 295; Martin v. Commercial Nat. Bank, 245 U.S. 513, 38 S.Ct. 176, 62 L.Ed. 441.

■ However, the property involved in the instant suit as already indicated has never been in the custody of the bankruptcy court. The purpose of appellee's intervention was to acquire for the bankruptcy court the custody of said property. The petition of intervention alleges that the possession was taken by the receiver at the instance of appellant, not from the custody or possession of the bankruptcy court, but from Turnidge. If, therefore, the trustee has any rights, remedies or powers beyond such as a creditor without lien would have, it must be solely because of the part of the hereinabove quoted provision reading thus: "and also, as to all property not in the custody of the bankruptcy court, [the trustee] shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied." The acquisition of the rights, remedies and powers thus conferred, like those above named, accrue, we think, as of the time of the filing of the petition in bankruptcy.

■ What are the rights, remedies, and powers of a "judgment creditor holding an execution duly returned unsatisfied?" Certainly under the laws of this State, not the same as a lien creditor. Generally, a judgment, with execution duly returned unsatisfied, does not alone, and in no case, perhaps, unless so provided by some statute, create a lien. Southern Dairies v. Banks, 4 Cir., 92 F.2d 282, and authorities stated.

In this State, even as to real property judgments are not liens except upon due recording of abstracts of judgment as provided in R.S.1925, Arts. 5447, 5448 and 5449, Vernon's Ann.Civ.St. arts. 5447–5449. We think no authority can be found to support a proposition to the effect that a judgment with execution issued thereon but not levied upon any property and not otherwise satisfied and no abstracts of which have been filed for record as by statute provided, constitutes a lien upon any property, whether real or personal.

■ We, therefore, conclude that it was established by the undisputed evidence applicable to the issues as defined by the pleadings, that the reservation of title to the property by appellant followed by the possession of the property taken by the receiver of the trial court at the instance of appellees, and inuring to its benefit, and as authorized by the terms of the contract, was valid as against appellee.

Had the Shield Company, Inc., the wholesaler, reserved the title to, or property in, the merchandise (chattels) as security for the purchase price thereof and C.I.T. Corporation had had no connection with the transaction, then we think such reservation of title, or property, would have been just as certainly valid as Bowen v. Lansing Wagon Works, supra, is authoritative as an interpretation of the law. If the wholesaler could sell subject to a valid reservation then undoubtedly it could convey its reserved title to another for a valuable consideration, such as the payment to it of the unpaid price of the property would be. We see no reason why it could not sell and make the same reservation directly in favor of the third person in consideration of the latter paying to it the amount of the purchase price in cash. A good analogy is to be found in the not uncommon transaction wherein a vendor of land willing to sell only for cash, and a vendee unable to pay cash may yet effect a deal by providing that purchase money notes be executed payable to a third party who in consideration therefor pays the purchase price in cash to the vendor. By agreement the parties may substitute the third party to all the rights in the way of security that the vendor could retain directly.

■ The Shield Company, Inc., from previous dealing, if in no other way, knew that Turnidge had secured from C.I.T. Corporation the advantages of the latter's floor plan accommodations. This is conclusively shown by the act of submitting to him for execution trust receipts in favor of C.I.T. Corporation. The shipment of merchandise direct to Turnidge and the mailing of invoices to him, otherwise and alone sufficient, perhaps, prima facie, to show a completed sale and transfer of title were prevented from having such effect by the notation "C.I.T. Floor Plan" on the invoice and the request for Turnidge to execute the trust receipts, and to accept the draft drawn upon him by the wholesaler payable to C.I.T. Corporation, or order.

The transaction clearly, we think, negatived any intention to vest in Turnidge either title to or ownership in the merchandise except as burdened with a reservation of the title as security for the purchase price. There was affirmatively evidenced the intention of all parties to reserve the title to or property in the merchandise in C.I.T. Corporation by way of substituting the latter for the wholesaler, in consideration of payment to the wholesaler of the purchase price of the goods.

Appellee, calling attention to the fact, as shown by some of the evidence, that C.I.T. Corporation could for nearly two weeks, or more, after shipment of the property to Turnidge, have declined to "purchase the draft" and accept the trust receipts and bill of sale (all tendered together), very pertinently inquires: Who would have title to the property during such time, and particularly who would have title after such time in case C.I.T. Corporation refused to purchase the draft? To speak of the action of C.I.T. Corporation as *purchasing* the draft, or refusing *to purchase* it, was obviously inaccurate. Why should the original payee in a draft purchase it? The real nature of the option which, according to some of the evidence, C.I.T. Corporation had, was to pay the amount of the draft in cash to the Shield Company as a condition upon which the draft, with the trust receipts and bill of sale, was to be delivered or become effective.

Under the circumstances, had C. I. T. Corporation refused to accept delivery of said papers, would that show conclusively that title to the property was in Turnidge? We think not. On the contrary, under such circumstances the Shield Company, Inc., could have established ownership of the merchandise as against Turnidge. The situation would have been similar to a transaction wherein, in contemplation of a conveyance of land, the grantee by permission should take possession before the execution of the deed and thereafter something transpires to render the execution of the deed impossible. Neither the ownership of, nor title to, the land would be in the grantee but would remain in the grantor and in a proper action could be so declared by judgment. By delivering possession of the goods to Turnidge the Shield Company no doubt took some risk but under this record it is our conclusion that no absolute title passed and the reservation of title in the way attempted was just as effective as if it had been made directly by the wholesaler to itself.

■ It is not our view that the possession of the property taken by appellant for Turnidge was in virtue of absolute ownership of the property. The reservation of title was *as security* for the purchase price of the property. That necessarily implies a sale. The effect of the reservation was, as plainly declared by the statute (R.S. 1925, Art. 5489), the retention of a lien upon same as security for the purchase price. The act of appellant in taking possession of the property was in virtue of a contract right, as a means of enforcing the lien.

Had there been an equity in the property, such equity would have constituted an asset of Turnidge's bankrupt estate. Had appellee recognized appellant's lien and the validity of appellant's possession as a means of enforcing such lien, and have shown an equity in the property, then no doubt upon condition of satisfying appellant's lien, appellee would have been entitled to possession of the property. Such was not the nature of the action. It is plainly evident there was no equity in the property and there was no claim that there was any. Hence, we conclude that the possession of the property by appellant was rightful as against the claims of appellee.

It being our opinion that the judgment of the court below should be reversed and judgment be rendered for appellant to the effect that appellee take nothing, it is accordingly so ordered.

## On Rehearing.

In our original opinion is this statement: "We regard the pleadings as presenting no issue relating to the custody of the property in controversy at the particular time of filing the petition in bankruptcy." That was inaccurate. The thought intended to be expressed was that the pleadings presented no issue of jurisdiction as independent of and distinct from the issues involving the rights of the parties in and title to the property. The intervener trustee alleged that plaintiff "has no valid claim or right to the possession and *ownership* of the said property" etc. (Italics ours.) "That the *title* and possession of said property has been and was at all times in the said Wm. A. Turnidge up until the filing of his petition in bankruptcy at 5 o'clock

on April 18, A. D. 1938." (Italics ours.) Then followed allegations .evidencing the contention that C. I. T. Corporation had no right *or title* to the property. The facts to show the asserted invalidity of C. I. T.'s title to the·property were averred evidently for no other purpose than to set forth the basis upon which intervener, having invoked the jurisdiction of the court to determine the rightfulness of title and possession, prayed that "said Frank Massey, State Receiver, be directed to deliver to R. W. Haynie, your intervener, all property now in his possession which was taken by him from the store and possession of Wm. A. Turnidge" etc. In the pleadings there is absent any suggestion to the effect that even though C. I. T. Corporation may subsequently be adjudged in the proper court to have the better right or title to the property, only the Federal Court has jurisdiction to make such adjudication and that in the meantime the receiver is entitled to the possession regardless of the true ownership or rights in the property.

In our original consideration of the case we failed to understand the recitations of the judgment relative to jurisdiction and the provision for the dismissal of the case. In the light of appellee's motion for rehearing they become understandable, with the .result that we are readily convinced we were in error in saying that since there was no question involved regarding the trial court's jurisdiction we should "treat the purported dismissal of the action as surplusage, or at any rate as not affecting the real nature of the action and judgment."

 The trial court had jurisdiction even if, disregarding any question of pleading, the jurisdiction was dependent upon the question of who had possession of the property at the time the petition in bankruptcy was filed. Under the uncontroverted evidence the Receiver of the state court took possession of the property about 4 o'clock, in the afternoon. He started immediately to take the merchandise out of the store and finished about 6:30 or 7:00 o'clock. The petition in bankruptcy was filed about 5:30 p. m. The possession was not forcefully or fraudulently taken but Turnidge yielded his possession to the Receiver upon the advice of the attorney preparing the petition in bankruptcy. The reason, however, of yielding possession is here unimportant. The fact that possession was yielded by Turnidge and taken by the Receiver before the petition in bankruptcy was filed is important and we think conclusive.

 We are confronted with the question of whether it becomes our duty to remand the case for retrial even though it appears that the case has already been fully tried, and if aside from the jurisdictional question our opinion be correct, which it appears the motion for rehearing does not seriously challenge, there exists no doubt as to the judgment which the court should have rendered. It appears to us that all essential issues were conclusively established and if we are correct in our views of the law the court below, instead of the judgment of dismissal, should have rendered judgment in favor of C. I. T. Corporation. We, therefore, conclude it is our duty to reverse the judgment of dismissal and render judgment that the intervener take nothing by his plea of intervention, that the plaintiff C. I. T. Corporation upon its cross-action have and recover the $1,600 deposited in the registry of the court, that otherwise the motion for rehearing be overruled, all of which is accordingly so ordered.